Vanessa ROBINSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 61149.

Court of Criminal Appeals of Texas,
Panel No. 2.

Dec. 22, 1982.

Kenneth D. Carden, Dallas, for appellant.

Henry Wade, Dist. Atty., and Fred C.
McDaniel and Catherine J. Crier, Asst. Dist.
Attys., Dallas, Robert Huttash, State's
Atty., and Alfred Walker, Asst. State's
Atty., Austin, for the State.

Before ONION, P.J., and W.C. DAVIS
and TEAGUE, JJ.

OPINION

W.C. DAVIS, Judge.

This is an appeal from a conviction for
prostitution under V.T.C.A. Penal Code,
Sec. 43.02(a)(1). Punishment was assessed
at 90 days confinement in the Dallas Coun-
ty jail probated for a period of six months
and a fine of $300.00.

Appellant's two contentions on appeal are
(1) that there is a material variance be-
tween the information and the evidence,
and (2) the evidence is insufficient to sup-
port her conviction.

The information in this cause alleged that
appellant did "knowingly offer to engage in
sexual conduct, namely: sexual intercourse
and deviate sexual intercourse with [com-
plainant], for a fee." See Sec. 43.02(a)(1),
supra.

In ground of error 1, appellant's specific
complaint is that the evidence is insuffi-
cient to establish that she *offered* to engage
in sexual conduct for a fee, but only that
she *agreed* to engage in sexual conduct for
a fee.

The record reflects that the complainant,
an officer for the Dallas Police Department,
was working undercover on the evening of
October 21, 1977. At about 9:00 p.m. he
drove to 1900 Browder Street where four or
five girls, including the appellant, were
standing in front of the Uptown Motel and
waved at him. When he stopped his vehi-
cle, the appellant approached the passenger
side. On direct examination, the officer
testified as follows:

"Q. [By the Prosecutor]: Starting with
the first in the series of events, tell
the Court what happened.

"A. I was working prostitution that
night and driving to 1900 Browder
Street around 9:00 or 10:00 o'clock
and approximately four or five girls
who were in front of the Uptown

"Q. When you pulled over, what if anything occurred next?

"A. A female came over to the car and we started talking about where I could find some action that night.

* * * * * *

"Q. When she approached the car, who spoke first?

"A. I did, I asked her where I could find some action.

"Q. What was her response?

"A. She asked what kind of action I was looking for.

* . * * * * *

"Q. What did you answer her when she asked what kind of action?

"A. I replied that: I was looking for a head job and possibly some pussy.

"Q. What do you mean?

"A. I mean sexual intercourse and oral intercourse.

"Q. You mean deviate sexual intercourse?

"A. Yes.

"Q. When you explained to her what you meant by some action, what if anything was her response?

* * * * * *

"A. She said: How much do you have to spend?

"Q. And what did you say then?

"A. I said I had $40.00 or $50.00.

"Q. Did she say anything after that?

"A. She said: That would be enough and I was the girl for her, she was the girl for me.

"Q. Officer, did you take that to mean that the Defendant was offering to engage in sexual and deviate sexual intercourse with you?

"A. Yes, ma'am.

"Q. And did you take that to mean that she was offering to engage in such conduct for an undetermined fee of approximately $40.00 to $50.00?

"A. Yes, ma'am.

"Q. After she responded that that would be enough and that she was the girl for you, what occurred next?

"A. Then she mentioned that we should go inside the motel that was there.

"Q. What motel was this?

"A. The Uptown Motel.

"Q. What if anything occurred next?

"A. I said I wouldn't go in there and I told her I was afraid that I would get rolled and I didn't want to do that, and I suggested that we stay inside the car.

"Q. What was her response?

"A. She said that she didn't want to do that, she wanted to go in the motel and she got out of the vehicle.

"Q. What if anything did you do next?

"A. I left the area and went back to where my cover was at Old City Park and described the findings to the officers there, Officer Chamber and Officer Thomas. They went over there and arrested her at that time."

In *McCarty v. State,* 616 S.W.2d 194 (Tex. Cr.App.1981), a case with closely analogous facts, the appellant appealed from her conviction for the offense of prostitution on the basis that the evidence showed that the "offer" was made by the arresting officer rather than herself. In overruling this ground of error and affirming the conviction, this Court stated:

"Appellant argues that the evidence shows that it was the testifying officer, and not appellant, who made the offer. Although the record indicates the initial offer was made by the complainant, it also shows protracted 'negotiations,' in which implied offers were made by both appellant and the complainant. We find the evidence sufficient and overrule the ground of error." 616 S.W.2d at 197.

We find the reasoning of McCarty, supra, to be controlling in the instant case. Although the record reflects that the officer made the initial inquiry, it also reflects

"protracted 'negotiations', in which implied offers were made by both appellant and the [officer]." Appellant's first ground of error is overruled.

■ In her only other ground of error, appellant apparently challenges the sufficiency of the evidence in that no "fee certain" was ever agreed to between the parties, and appellant withdrew from all negotiations and left the officer's car before a final agreement had been made. Appellant has cited us no authority, and we have been equally unable to find any requirement that a definite "sum certain" be ascertained or a requirement that any type of final agreement be entered into in a prosecution for the offense of "offering to engage in sexual conduct." The ground of error is overruled.

The judgment is affirmed.

TEAGUE, Judge, dissenting.

This is an appeal from a conviction for the offense of prostitution. The trial court determined appellant's guilt, and assessed her punishment at a fine of $300 and confinement in jail for 90 days, with both fine and jail time probated for a period of six months.

In her first ground of error, appellant contends that there exists a "material variance between the accusatory pleadings and the State's proof at trial." A majority of this panel disagrees with this assertion to affirm the conviction, a conclusion with which I cannot agree. I therefore will set forth the reasons for my dissent.

Section 43.02 of the Penal Code states [1] that one may commit the offense of practicing what Rudyard Kipling once referred to as "An ancient and more or less honorable profession" in four different ways: under subsection (a)(1), by offering to engage, agreeing to engage, or engaging in sexual conduct for a fee; and under subsection (a)(2), by soliciting another in a public place to engage in sexual conduct (with the solicitor) for hire.

In the instant case, the State chose to allege that appellant committed the offense of prostitution *by offering to engage in sexual conduct for a fee,* under the first clause of subsection (a)(1).[2] But the evidence adduced at trial, when viewed in the light most favorable to the fact finder's verdict, See *Jones v. State,* 442 S.W.2d 698 (Tex.Cr.App.1969), does not support the allegation that appellant "offered" her services to the complainant, a "plain clothes" Dallas police officer who was working "undercover" on the evening in question. The facts show the following:

The sole witness at the guilt stage of appellant's bench trial was Michael Ozga, a Dallas police officer. Ozga testified that he was "working prostitution" on the evening of October 21, 1977, was dressed in "plain clothes," and was driving a 1977 silver colored Chevrolet Camaro automobile. Sometime between the hours of 9:00 P.M. and

1. V.T.C.A. Penal Code, Sec. 43.02, provides: (a) A person commits an offense if he knowingly: (1) offers to engage, agrees to engage, or engages in sexual conduct for a fee; or (2) solicits another in a public place to engage with him in sexual conduct for hire. (b) An offense is established under Subsection (a)(1) of this section whether the actor is to receive or pay a fee. An offense is established under Subsection (a)(2) of this section whether the actor solicits a person to hire him or offers to hire the person solicited. (c) An offense under this section is a Class B misdemeanor, unless the actor has been convicted previously under this section, in which event it is a Class A misdemeanor.
Section 43.01 defines "sexual conduct" to include deviate sexual intercourse, sexual contact, and sexual intercourse. "Sexual intercourse" means any penetration of the female sex organ by the male sex organ. "Deviate sexual intercourse" means any contact between the genitals of one person and the mouth or anus of another person. "Sexual contact" means any touching of the anus, breast, or any part of the genitals of another person with intent to arouse or gratify the sexual desire of any person.

2. The information filed in this cause reads in pertinent part as follows:
Vanessa Robinson hereinafter styled Defendant, heretofore, on or about the 21 (sic) day of October A.D., 1977 in the County of Dallas and State of Texas, did unlawfully then and there knowingly *offer to engage in sexual conduct, namely: sexual intercourse and deviate sexual intercourse, with M.C. Ozga, for a fee.* (Emphasis Added)

10:00 P.M., when Ozga was driving his vehicle in front of the Uptown Motel, he observed four or five women outside the motel waving at him. Ozga then stopped his vehicle. Ozga never specifically identified appellant as one of the five women who waved at him.

Ozga testified one woman, whom he identified as appellant, thereafter approached his car and "leaned on the car window." *Ozga spoke first, inquiring,* "where (he) could find some action." Appellant *asked* what kind of action he sought. Before Ozga replied, appellant got into Ozga's vehicle. Ozga then replied that he was "looking for a head job and possibly some pussy," explaining at trial that these terms refer to acts of deviate sexual intercourse and sexual intercourse. Appellant asked Ozga how much money he had to spend, and Ozga told her that he had $40.00 or $50.00. Ozga also testified that *Appellant then said,* "That would be enough" and that "(she) was the girl for her (sic), she was the girl for me."[3]

Ozga further testified that appellant then "mentioned that [they] should go inside the [Uptown Motel]." Ozga refused the invitation, believing he would get "rolled," and suggested to appellant that they stay in the car. Appellant refused the suggestion, and then exited Ozga's vehicle. Ozga then departed and went to "Old City Park," where

he informed his "cover," which consisted of other police officers, of what had earlier taken place between him and appellant. Appellant was arrested in front of the motel a short time afterwards by other police officers.[4]

I believe the decision should turn on the appropriate construction of the statutory phrase, "*offers to engage . . . in sexual conduct for a fee.*" (Emphasis added). Appellant seems to argue in her brief that we should apply and utilize the technical requirements for a valid and binding "offer", as found in the law of contracts, but I do not believe this is necessary[5] since we can take cognizance of Section 2.01 of the *Code Construction Act,* Art. 5429b–2, V.A.C.S., made applicable to criminal prosecutions by V.T.C.A. Penal Code, Sec. 1.05(b), and which reads as follows:

> Words and phrases shall be read in context and construed according to the rules of grammar and common usage. Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly.

This court, in cases involving consideration of Article 5429b–2, V.A.C.S., or Article 8 of the former Penal Code, has held that under the foregoing statutes, words and

---

**3.** The record also reflects the following:

Q: Officer, did you take that to mean that the Defendant was offering to engage in sexual and deviant sexual intercourse with you?
A: Yes, ma'am.
Q: And did you take that to mean that she was offering to engage in such conduct for an undetermined fee of approximately $40.00 to $50.00?
A: Yes, ma'am.

As to the witness' opinions, they mean nothing in arriving at what I believe to be the correct disposition of this case. The expression of guilt or innocence in this case was first, a conclusion to be reached by the trial court, and secondly, upon this Court to determine if the evidence adduced, in conjunction with the State's pleadings, sufficiently supported the verdict of the trial court. Thus, Ozga was not competent to voice, either directly or indirectly, an opinion as to the guilt of the appellant. *Boyde v. State,* 513 S.W.2d 588 (Tex.Cr.App. 1974).

**4.** At the punishment stage of the trial, appellant testified, without being asked to amplify on her answers, that at the time Ozga drove up, "in this little gray car," she "had called [a] cab from the motel and was going home and didn't want to talk to him." She denied going to Ozga's automobile, but testified that Ozga called out, "Hey, you in the red and black," "Can I talk to you?" The appellant testified that in response she told Ozga: "There are a lot of other girls around here." "I [am] going home." After appellant told Ozga that she was going home, he told her: "Wait, I will make a block and I will be right back." Appellant testified that shortly thereafter, when she was "talking to some other girls," "this car came and it drove up real fast and there were two dudes in it and one of them jumped out and grabbed my purse, [and arrested me]."

**5.** Nevertheless, I find that in the law of contracts the terms "offer" and "proposal" are synonymous. 14 *Tex.Jur.3rd,* 105–106 (1981 Ed.). See *post.*

phrases not "specially defined" in the Penal Code will be "measured by common understanding and practices," or will be "construed in the sense generally understood." See, e.g., *Ely v. State,* 582 S.W.2d 416 (Tex. Cr.App.1979); *Ex Parte Chernosky,* 153 Tex.Cr.R. 52, 217 S.W.2d 673 (1949). In other cases we have held that in the absence of a legislative definition of words and phrases found in the Penal Code they will be accorded their "ordinary meaning." See, e.g., *Floyd v. State,* 575 S.W.2d 21 (Tex.Cr.App.1978); *Morter v. State,* 551 S.W.2d 715 (Tex.Cr.App.1977); *Courtemanche v. State,* 507 S.W.2d 545 (Tex.Cr.App. 1974). Such ordinary meaning is to be arrived at in part by a determination of the legislative intent in the use of the words in the particular statute. *Courtemanche v. State,* supra; *Slusser v. State,* 155 Tex. Cr.R. 160, 232 S.W.2d 727 (1950) (on motion for rehearing).

As the phrase, "offers to engage in sexual conduct," is not defined in the Penal Code and as it seems inconceivable that the Legislature intended that only an offer valid and binding under contract law would constitute an offense, I believe we should construe the word "offer" according to its ordinary meaning, i.e., to "propose" or "suggest." See *Webster's New Collegiate Dictionary* 790 (1980 edition).

Even under this construction, I do not find that appellant's actions and statements to Ozga *constituted an express or implied offer to engage in sexual conduct for a fee.* Ozga never specifically testified that appellant was one of the women near the motel who waved at him, which caused him to stop his vehicle. The evidence shows that after appellant approached him, *Ozga initiated* the ensuing conversation with appellant, and *proposed or suggested* that he and appellant engage in various types of sexual conduct. Although appellant inquired as to how much money Ozga had to spend, I cannot construe this inquiry by appellant as an offer to engage in sexual conduct, for the mere asking, "How much money one had to spend," without more, would not constitute an "offer to engage in sexual conduct for a fee," especially as in this case

where the officer, Ozga, is the one who actually made the original offer to appellant to engage in sexual conduct.

It was only after Ozga replied that he had $40 to $50 that appellant clearly "agreed to engage" in sexual conduct for a fee. *But,* appellant was *not* charged with having agreed to engage in sexual conduct for a fee, as permitted by the second clause of V.T.C.A. Penal Code, Sec. 43.02(a)(1). Instead, she was charged under the first clause of that statute, "offering to engage in sexual conduct ... for a fee," and there is simply no evidence to support the allegation of an *offer* on her part. If the Legislature believed that the phrases "offers to engage" and "agrees to engage" are synonymous, I do not believe that they would have been separately included in the Penal Code: "[E]very word of a statute is presumed to have been used for a purpose, and a cardinal rule of statutory construction requires that each sentence, clause, phrase and word be given effect if reasonably possible." *Morter v. State,* supra.

In reaching this conclusion, I have not ignored a recent decision of this Court, see *McCarty v. State,* 616 S.W.2d 194 (Tex.Cr. App.1981), which the majority so heavily relies upon. *McCarty* held that the evidence adduced in that cause, a prostitution case, sufficiently established an implied offer by the defendant. That case, however, is distinguishable on its facts. In *McCarty,* the *defendant initiated* the conversation, which then proceeded for a time along lines remarkably similar to the testimony in the instant case. The conversation between the complainant and defendant in *McCarty,* however, continued for some time thereafter, as the defendant attempted to ascertain if the complainant was a police officer, and "haggled" with him over the fee. In light of those facts, a panel of this Court held as follows:

Appellant argues that the evidence shows that it was the testifying officer, and not appellant, who made the offer. *Although the record indicated the initial offer was made by the complainant, it*

*also shows protracted "negotiations," in which implied offers were made by both appellant and the complainant.* We find the evidence sufficient and overrule the ground of error. (Emphasis Added)

In the instant case, appellant did *not* initiate the conversation with the complainant. Cf. *Morris v. State,* 565 S.W.2d 534 (Tex.Cr. App.1978). And unlike the situation in *McCarty* there were no "protracted negotiations" between appellant and the complainant. The *McCarty* opinion indicates that if the "protracted negotiations," in which "implied offers" were made, had not existed, then the evidence would have been held insufficient. We also observe that in *McCarty* the defendant, when initiating the conversation with the undercover police officers, asked them "what [they] were looking for." When the complainant said: "I told her we were looking for some fun," the defendant asked, "what kind [of fun] we were looking for." The complainant then said: "I wanted a head job and some pussy." To this, the defendant responded: "Well, you've found your fun." Here, Ozga merely testified that he was "looking for a head job and possibly some pussy," in response to appellant's question of what kind of "action" he sought. In context, there is no showing that to appellant the words "fun" and "action" have the same meaning. By its very meaning, the word "fun" means: "providing entertainment, amusement or enjoyment." Webster's New Collegiate Dictionary 461 (1980 Ed.). However, in Webster's we also find that the word "action" has nine different meanings. Thus, *McCarty* does not conflict with my view of the correct decision in the instant case, as the facts here do not show any protracted negotiations by the appellant after Ozga offered to engage appellant in deviate sexual intercourse.

However, I would not hold that under the above rationale the positions of "offeror" and "offeree," once established, become immutable. See *McCarty,* supra. By the testimony adduced, Ozga initiated the conversation, thus becoming the offeror. His initial offer to appellant was more in the realm of *soliciting* a female to engage with him in deviate sexual intercourse and sexual intercourse. Though appellant inquired as to how much money he had, and he replied, and thereafter said, "That would be enough," and that "[she] was the girl for [me]," I find that this constitutes not an offer, but a mere *acceptance* of Ozga's offer. Thus, in this cause, the positions of offeror and offeree never changed, i.e., Ozga remained, from the beginning to the end, the offerer, and appellant always remained in the position of offeree. As noted, there is no question but that appellant *accepted Ozga's offer to engage in deviate sexual intercourse and sexual intercourse.* However, as also noted, that is not the offense for which appellant was on trial.[6]

As I believe that the evidence is insufficient to prove the allegations of the information filed in this cause, the conviction should be reversed and reformed to reflect an acquittal. To the majority's failure to do so, I must respectfully dissent.

---

**6.** In a case where the offense involves an alleged practitioner of what might be the oldest profession in the world, and to allow for contingencies of proof which may submerge the facial facts and convert them during trial into the real facts of the case, the wise pleader would do well to plead the offense in alternative fashion, using Sec. 43.02(a)(1) as a guide. Here, the prosecuting attorney unquestionably established and proved that the appellant "agreed to engage" in sexual conduct for a fee. However, because there are no pleadings to support this proof, this Court has no other alternative than to reverse, which it erroneously fails to do.