**Debbie OZACK, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 60015.**

Court of Criminal Appeals of Texas, En Banc.

March 16, 1983.

James M. Murphy, Dallas, for appellant.

Henry Wade, Dist. Atty. and John Tatum, Thomas R. Benson and John Lozano, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty. and Alfred Walker, Asst. State's Atty., State's Atty., Austin, for the State.

## OPINION

W.C. DAVIS, Judge.

This is an appeal from a conviction for the offense of prostitution under V.T.C.A. Penal Code, Sec. 43.02(a)(1). The court assessed punishment at 30 days' confinement in the Dallas County Jail.

■ In her first two grounds of error appellant challenges the constitutionality of the prostitution statute. Sec. 43.02(a)(1), supra, provides:

"(a) A person commits an offense if he knowingly:

"(1) offers to engage, agrees to engage, or engages in sexual conduct for a fee;"

Appellant maintains that the term "offer" is unconstitutionally vague, uncertain, and indefinite. This same challenge was considered and rejected in *McCarty v. State*, 616 S.W.2d 194 (Tex.Cr.App.1981).[1] The first two grounds of error are overruled.

■ Appellant next complains of the denial of her motion to quash the information. She argues that the allegation of "offer" denied her the right to sufficient notice of the charges against her. The information alleged in relevant part that appellant did:

"... knowingly offer to engage in sexual conduct, namely: sexual intercourse and deviate sexual intercourse, with M.R. Hill, for a fee."

Virtually all of the quoted language is descriptive of the offer: what conduct was offered, to whom it was offered, and that it

was offered for a fee were all alleged. It was not error to deny the motion to quash. *McCarty,* supra.

■ Appellant next challenges the sufficiency of the evidence. She argues that the evidence is insufficient to establish that she *offered* to engage in sexual conduct for a fee, establishing only that she *agreed* to engage in such conduct.

The record reflects that the complainant, an officer for the Dallas Police Department, and his partner were working undercover in the early morning hours of September 17, 1977. At approximately one o'clock a.m. the officers encountered a woman known only as Annie who subsequently "agreed to a date of prostitution" and to find a companion for the other officer. Annie thereafter introduced Debra Ann White, appellant's co-defendant, but as they and the officers were "conversing about a date of prostitution" a marked police car pulled into the area, understandably causing an end to the negotiations.

The officers then drove around the area, subsequently finding White together with appellant. Hill asked White where Annie was, because "[w]e had a deal working with her." White replied "[w]ell, we'll make you a better deal," at which time White and appellant got in the back seat of the officers' automobile.

A conversation among the four then ensued in which "half and half prostitution" was discussed. White then agreed to engage in "half and half prostitution" with McWilliams for $25.00. Hill thereafter inquired as to the exact nature of "half and half prostitution." After appellant gave Hill an explicit explanation of the activities involved, he asked, "Well, are you agreeable to that at that price?" Appellant answered, "Yes."

In *McCarty,* supra, this Court dealt with the same question presented here: whether an allegation of "offer to engage ..." was

---

1. We note that the defense counsel in this appeal also represented the appellant in McCarty, supra. Further, the first four grounds of error in McCarty, supra, are substantially identical to the first four grounds in the case at bar.

sufficient to support a conviction upon evidence that the arresting officer may have actually made the initial offer, while the appellant thereafter agrees to engage in sexual conduct. In finding such an allegation sufficient, we stated:

"Appellant argues that the evidence shows that it was the testifying officer, and not appellant, who made the offer. Although the record indicates the initial offer was made by the [officer], it also shows protracted 'negotiations,' in which implied offers were made by both appellant and the [officer]. We find the evidence sufficient and overrule the ground of error." 616 S.W.2d at 197.

We find the reasoning of *McCarty*, supra, controlling in the instant case. Although the record reflects that the officer made the initial inquiry, it also reflects " 'negotiations,' in which implied offers were made by both appellant and the [officer]." The evidence is sufficient and ground of error four is overruled. See also *Robinson v. State*, 643 S.W.2d 141 (Tex.Cr.App.1982).

█ Finally, appellant complains of the trial court's failure to sustain her objection to the following question of Officer Hill:

"Q. [By the Prosecutor]: Did the Defendant, Debbie Ozack, offer to engage in sexual intercourse and deviate sexual intercourse with you for a fee?

"[Defense Counsel]: Objection, Your Honor. It calls for a legal conclusion.

"THE COURT: Overruled.

"[Defense Counsel]: Note our exceptions.

"Q. You may answer the question.

"A. She did."

Appellant maintains that this question was improper in that it called for an answer which constituted a legal conclusion. While

this question could be construed as calling for a legal conclusion, the trial being before the court, sitting without a jury, we can assume that any improper testimony was disregarded by the judge; therefore, the error, if any, was rendered harmless. Cf. *McClendon v. State*, 643 S.W.2d 936 (Tex. Cr.App.1982). The ground of error is accordingly overruled.

The judgment is affirmed.

CLINTON, Judge, dissenting.

More than five years ago, September 17, 1977, two Dallas Police Department peace officers were engaged in the "often competitive enterprise of ferreting out crime"[1] against practitioners of the world's oldest profession. After an episode about to be described, one of the peace officers caused to be filed a complaint charging that appellant did "knowingly *offer* to engage in sexual conduct ... with M.R. Hill, for a fee."[2] On her plea of not guilty to an information conforming to that complaint, appellant was tried before the court, found guilty and assessed thirty days confinement in the Dallas County Jail. The Court is now called on to review this mundane affair, the several grounds of error centering on the clarity of the meaning of "offer," as used in the statute,[3] and its application to the transaction at issue.

Through a chance encounter with a woman known only as Annie, the officers established a beachhead at a place called the Steak and Egg on Cedar Springs Avenue in north Dallas. Annie, as the State puts it, had "agreed to a date of prostitution" and to find a companion for the other officer, David McWilliams. Failing in her first ef-

---

1. *Johnson v. United States*, 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948).

2. All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

3. As amended by Acts 1977, 65th Leg., p. 757, ch. 286, effective May 27, 1977, V.T.C.A. Penal Code, § 43.02 provides in pertinent part:

"(a) A person commits an offense if he knowingly:
(1) offers to engage, agrees to engage, or engages in sexual conduct for a fee...
\* \* \* \* \* \*
(b) An offense is established under Subsection (a)(1) of this section whether the actor is to receive or pay a fee."

fort,[4] Annie next produced one Debra Ann White, but as they and the officers were "conversing about a date of prostitution" a marked police squad car pulled into the area "and everybody ran." Having set the scene and context, and noting that the parties do not disagree on the underlying facts, what follows is the recitation by the State of the *res gestae* of the offense charged, with material set out in footnotes when I deem a more precise exposition is appropriate.

"Subsequently, after the two officers drove around a few minutes they saw Debra Ann White and Appellant together.[5] Officer Hill asked White where Annie was. White asked him back why he was looking

for her. White said that they would make him a better deal and got into the back seat of the officer's automobile.[6] While in the back seat of the car, White and Appellant *agreed*[7] to a date of half and half prostitution for $25.00. Appellant explained what the *terminology meant and all agreed to* the price.[8] While they were driving around in the car, the two officers identified themselves as police officers..."[9]

The meaning of "offer," not defined in the Penal Code, apparently has not acquired a technical or particular meaning even on the civil side.[10] Thus, we are directed by the Code Construction Act, Article 5429b–2, § 2.01 to read the word in context and

4. When first presented to the officers in mufti in their undercover vehicle, the unnamed, prescient woman "jerked back and said, 'No. They're police,' and started shaking, and turned around, and briskly walked away," according to Officer Hill.

5. "Q: Well, what happened after they walked out on the parking lot [from the Steak and Egg]?
A: They were looking at us, and I motioned to them to come to the car, and they came over to the car."

6. Officer McWilliams was driving the car and after the women settled in the back seat he and White, with whom he had earlier dealt, took the lead. He testified that he "affirmed the deal I had made with" White, and then "my partner started talking to the other lady about *if* she was going to go with him;" later he phrased it that Hill "began to talk" to appellant "*to find out if* she was going to go with him for the same purposes."

7. Asked by the prosecuting attorney "how it came about that you made a date of prostitution with Debbie Ozack," Officer Hill began with "Officer McWilliams and Debra Ann White had agreed—" but was interrupted by an objection, and when an ensuing colloquy was ended was permitted to complete his answer, *viz:* "They had agreed to a date of half and half prostitution for $25.00." Hill then asked "to whoever would answer" for an explanation of a half and half date of prostitution. Though appellant, after a moment's hesitation, gave an explanation, we omit it here for the exact vernacular is *not all that relevant; suffice it to say* the acts explained constitute one or another form of sexual conduct as defined by V.T.C.A. Penal Code, § 43.01(4). Then continuing, Officer Hill testified in response to the prosecutor:
"Q: And then, what did you say?

A: I said, 'Well, are you *agreeable* to that at that price?' And she said 'Yes.'
Q: Who said yes?
A: Debbie Ozack.
Q: Now, what happened next?
A: We—Officer McWilliams decided to drive out of the parking lot in the pretense that we were going to a motel."
There is no testimony that another word passed between the four persons until moments later when one or the other officer—both claimed to have been first—identified themselves as police officers.

8. Concluding his examination the prosecuting attorney asked, and after objection was overruled, Officer Hill was permitted to say globally that appellant did "offer to engage in sexual intercourse and deviate sexual intercourse with [him] *for a fee*." Then, perhaps the most curious question was posed and drew a direct response:
"Q: And the fee was to be *payable to you.*
A: Yes."

9. Both women departed the vehicle and took flight amid shouts of "Police Officer," "You're under arrest," "Freeze" and the like; there was hot pursuit and guns were drawn. White was apprehended by Hill: "Well, I continued the chase, and I tried to grab her and pull her wig off, and as we approached the street, she slipped, and I was able to tackle her." Appellant, meanwhile, eluded Officer McWilliams, and for that was charged with evading arrest.

10. But compare *Shappley v. State,* 520 S.W.2d 766, 768 (Tex.Cr.App.1974), a case of first impression involving the meaning of "offer for sale" as used in the Securities Act, Article 581–4(E), V.A.C.S., and *State Farm Mutual v. Owens,* 308 S.W.2d 189, 192 (Tex.Civ.App.— Ama. 1957, writ refused n.r.e.).

construe it according to rules of common usage. Clearly, in context "offers to engage" is intended to mean something other than "agrees to engage, or engages" in sexual conduct, and in view of the express provision of § 43.02(a)(2) is not to mean "solicits another" to engage in sexual conduct.[11] Thus, some nuances of "offer" as a transitive verb are excluded from its meaning by the context in which the Legislature chose to include it. Whatever the remaining reach of "offer," that which is shown to have occurred here is not within it.[12] While appellant said she was "agreeable" to half and half prostitution, still by all accounts she was responding to the initiative of Officer Hill. In short, the State did not prove the offense it alleged in the information.[13]

Finding the evidence is insufficient to support the judgment of conviction, I would sustain ground of error four.[14] Since the majority does not, I respectfully dissent.

TEAGUE, Judge, dissenting.

For the reasons I stated in my dissenting opinion in *Robinson v. State,* 643 S.W.2d 141, 143 (Tex.Cr.App.1982), I respectfully dissent. The facts here, to uphold the sufficiency of the evidence, in accordance with the allegations of the charging instrument, are no better than they were in *Robinson,* Id. And either until the facts to support an accusation such as here or the wording of such an accusation as here get better, I shall continue to dissent.

But there is another reason why I must dissent in this cause. In *McCarty v. State,* 616 S.W.2d 194, 197 (Tex.Cr.App.1981), a panel of this Court, in rejecting the defendant's contention that the evidence established only that the testifying officer, and not the defendant, made the offer, stated: "Although the record indicates the initial offer was made by the complainant, it also shows *protracted 'negotiations,'* in which implied offers were made by both appellant and the complainant. We find the evidence sufficient and overrule the ground of error." (Emphasis Added). In *Robinson v. State,* supra, the author of that opinion, who is the author of this opinion, "borrowed" the above underscored language from *McCarty,* supra, and stated: "We find the reasoning of *McCarty,* supra, to be controlling in the instant case. Although the record reflects that the officer made the initial inquiry, it also reflects *'protracted negotiations,'* in which implied offers were made by both appellant and the [officer]." (Emphasis Added). Today, however, apparently finding a distaste for the word "protracted," the author of this opinion has shortened "protracted negotiations" to simply "negotiations." A cursory examination of the word "protract" in any dictionary will quickly reveal that this transitive verb means, among others, "To draw out or lengthen in time; prolong." 1052 *The American Heritage Dictionary of the English Language.*

11. "(a) A person commits an offense if he knowingly:
     (1) * * *
     (2) solicits another in a public place to engage with him in sexual conduct for hire." See, for this connotation *Fields v. State,* 544 S.W.2d 153, 155 (Tex.Cr.App.1976).

12. We are informed by Fernald, *Synonyms, Antonyms & Prepositions,* Funk & Wagnalls, New York, at 303: "What one *offers* he brings before another for acceptance of rejection; one may *offer* a gift, a suggestion, a sacrifice; one may even *offer* an insult, leaving the other party, in common phrase, to 'take it up' or not. [emphasis in original]."

13. The majority practically concedes as much for it transforms the offense alleged from "offers" to "negotiations." Thus, mere banter

about sexual activity, being susceptible to whatever interpretation one is inclined to give it, risks the danger that a listener may be an undercover peace officer. We are often accused of judicially legislating; this time the charge is true.

14. The State contends that appellant may be held criminally responsible as a party under V.T.C.A. Penal Code, §§ 7.01 and 7.02(a)(2), on the theory that appellant was acting with the requisite intent and assisted Debra Ann White in committing the offense. But this analysis overlooks that White had already made her deal with McWilliams without appellant and long before she is shown at the scene of the Steak and Egg.

There are four ways in which to commit the offense of prostitution, pursuant to V.T.C.A., Penal Code, Sec. 43.02, to-wit: offer to engage, agree to engage, engage in sexual conduct for a fee, or solicit another in a public place to engage with him in sexual conduct for hire. In this instance, the appellant was charged solely with offering to engage in sexual conduct with another for a fee, the third mode of committing the offense. As the State chose this form of prostitution to allege the offense, it should be required to prove that allegation. It did not, and the majority's mere use of the word "negotiation" does not assist the State. The conviction should be reversed.

To the failure of the majority to do so, I respectfully dissent.