**Opinion filed August 28, 2009**



# In The

# Eleventh Court of Appeals

_____

## No. 11-07-00348-CR

_____

## JESUS ROBERTO GONZALES, Appellant

## V.

## STATE OF TEXAS, Appellee

**On Appeal from the 91st District Court**

**Eastland County, Texas**

**Trial Court Cause No. CR-04-20,363**

## M E M O R A N D U M   O P I N I O N

The trial court convicted Jesus Roberto Gonzales of indecency with a child, found the enhancement allegation to be true, and assessed his punishment at confinement for twenty years. We affirm.

Appellant challenges the legal sufficiency of the evidence to support his conviction. Specifically, appellant argues that there is insufficient evidence to show that he touched his daughter's genitals with the intent to arouse or gratify the sexual desire of any person.

In order to determine if the evidence is legally sufficient, the appellate court reviews all of the evidence in the light most favorable to the verdict and determines whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009); *Jackson v. State*, 17 S.W.3d 664, 667 (Tex. Crim. App. 2000). The appellate court reviews the factfinder's weighing of the evidence and cannot substitute its judgment for that of the factfinder. *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997); *Clewis v. State,* 922 S.W.2d 126, 133 (Tex. Crim. App. 1996).

Due deference must be given to the factfinder's determination, particularly concerning the weight and credibility of the evidence. *Johnson v. State*, 23 S.W.3d 1 (Tex. Crim. App. 2000); *Jones v. State*, 944 S.W.2d 642 (Tex. Crim. App. 1996). The appellate court's role is "restricted to guarding against the rare occurrence when a factfinder does not act rationally." *Laster*, 275 S.W.3d at 517.

Texas Ranger David Hullum testified that he was contacted by the Ranger Police Department to help with the investigation of an alleged sexual abuse of a child. The victim was the three-year-old daughter of appellant and his girlfriend. The victim had made an outcry to her mother and to her babysitter. Child Protective Services was contacted, but appellant refused to work with the agency. The mother, the victim, and the victim's two-year-old brother were moved to the Noah Project in Abilene.

Ranger Hullum testified that the victim's interview at the Noah Project was consistent with her outcry to her mother and to her babysitter. Ranger Hullum contacted appellant and arranged for an interview. Appellant came with family members to Ranger Hullum's office and gave a statement denying the sexual contact. Appellant's statement was inconsistent with the victim's outcries and interview and with the mother's report.

Later, on a different day, appellant returned with family members to Ranger Hullum's office. Appellant participated in two interviews. Ranger Hullum did not participate in the first interview that day. During the second interview, Ranger Hullum stated that appellant was "very nervous" and "appeared to be agitated." He had a hard time maintaining eye contact when he answered questions. Appellant admitted that he had engaged in sexual contact with his daughter by touching her genitals

while he bathed her. Appellant stated that both he and his daughter were unclothed at the time. Appellant told the officers, in his own words, that he became aroused washing his daughter and had an erection. Appellant then gave a written statement admitting the offense.

Ranger Hullum stated that this second statement was inconsistent with appellant's first statement in which he told Ranger Hullum that he would never touch his child in a sexual way. Based on his law enforcement training and experience and on his training in kinesics (the interpretation of nonverbal communication), Ranger Hullum concluded that appellant had not totally disclosed his behavior toward his daughter. Ranger Hullum also concluded that appellant had engaged in sexual contact with the intent to arouse and gratify his own sexual desires. Ranger Hullum based his conclusion on appellant's admission that, while he was washing his daughter's vaginal and buttocks areas, he had what he called a "boner."

On cross-examination, Ranger Hullum explained that kinesics was the "study of the physiological changes that occur when a person is under stress and gives deceptive answers." Ranger Hullum testified that he believed that kinesics as well as interviewing involved both science and art. Ranger Hullum stated:

> I think it's both because you have to understand what the physiological changes are and you have to be adept at recognizing those changes, and you have to be experienced enough through the hundreds of interviews that I have ever conducted of interviewing people that told me the truth and of people that were being deceptive. So, I'm saying it's a little of both.

Texas Department of Public Safety Sergeant Matthew Mull testified that he was assigned to the Criminal Intelligence Service and that one of his duties was to assist local law enforcement agencies with the interviewing of persons suspected of criminal activity. He advised appellant of his rights and conducted two interviews. In the first interview, appellant denied any sexual contact with his daughter. In the second interview, appellant stated that, while he was bathing his daughter's vaginal and buttocks areas, he obtained an erection. Sergeant Mull stated that appellant had used the word "boner" to describe his erection. Sergeant Mull also testified that, based on his training and experience, he did not believe that appellant completely disclosed his behavior involving this offense.

3

Appellant testified in his own behalf. Appellant stated that his first statement where he stated "I never touched my daughter in a sexual way" was correct. Every word of his first statement reflected what he had said. He stated that he did not know what the words "voluntarily," "duress," "leniency," or "knowingly" meant but that he did know what "intelligently" and "waive" meant. He did not remember if Ranger Hullum had read the second statement to him. Appellant testified that Ranger Hullum did not tell him what the bold type on the second statement (which was appellant's admission) said. Appellant stated that he only signed the second statement because the officers were yelling at him and told him that they would help him out, if he signed the statement.

Appellant testified that his children were in foster care in New Mexico at the time of trial. When they lived together as a family, appellant took care of the children. He fed them, bathed them, and got their clothes washed. He would clean the apartment. When he could not, he would pay his thirteen-year-old niece to clean it. He stated that, on the day in question, he came home from work to find the children were dirty. He bathed both of them and never touched his daughter in a sexual way. He stated that he did not get an erection while he was bathing the children. He stated that he tried to keep the children clean because "the social service" was after them. He also stated that his girlfriend would not take care of the children.

On cross-examination, appellant stated that a person who touched a child in a sexual way should be put in jail and should not be let out. Appellant said that he did not know what the word "erection" meant, but he did know what the word "boner" meant. Appellant stated that his daughter called her private area her "coco." He did not know why his daughter would have said that her coco hurt after a bath or after she had slept with appellant, her mother, and her brother in the same bed. Appellant also testified that, when he bathed the children, he and the children would be naked. His daughter faced him in the bathtub.

Marie Guitierrez testified that appellant was her uncle. Guitierrez stated that she saw the family about once a day, that appellant's girlfriend did not take care of the children, and that appellant took care of the children. Appellant paid her to cook and clean. She would watch the children when appellant went to work because his girlfriend would "just leave out." Appellant never did anything that made her feel uncomfortable.

4

Monica Enriquez, appellant's second cousin, testified that she was over at appellant's home almost everyday. She was eleven or twelve at the time. She said that appellant took care of the children more than his girlfriend. Enriquez stated that she would go over to appellant's home because the girlfriend was "hardly there." Appellant bathed the children most of the time. He would leave the door open. Appellant never did or said anything that made her feel uncomfortable.

Daniella Armenta testified that appellant was her uncle and that he paid her to clean his home. She would clean every time appellant got paid. Appellant took care of the children. Armenta also testified that she would cook for appellant. She did not see appellant bathe the children. Armenta testified that appellant never said anything sexual to her and that he never tried to "come on" to her in any way.

Maria Monclova testified that she lived across the apartment complex from the family. Monclova stated that she was in their home almost every day. Appellant took care of the children. Monclova had had the family over to her home to eat. She testified that she would not eat at their home because appellant's girlfriend "had her house all dirty all the time."

Mary Jane Mackey testified that she was related to both appellant and his girlfriend. She was appellant's sister, and she had been married to his girlfriend's uncle. Appellant took care of the couple's children. When his girlfriend left Ranger, she dropped the children off at Mackey's house in Abilene and left them for a week. Mackey testified that appellant had watched her four children, their sister's three children, and their brother's five children and that no one had ever commented that appellant had made or did anything sexually suggestive.

The trial court, as the finder of fact, was the sole judge of the weight and credibility of the testimony. *Adelman v. State*, 828 S.W.2d 418 (Tex. Crim. App. 1992); *DeBolt v. State*, 604 S.W.2d 164 (Tex. Crim. App. 1980); *Austin v. State*, 794 S.W.2d 408 (Tex. App.—Austin 1990, pet. ref'd). This court has the authority to disagree with the factfinder's determination "only when the record clearly indicates such a step is necessary to arrest the occurrence of a manifest injustice." *Johnson*, 23 S.W.3d at 9. A rational factfinder could have concluded that appellant committed the offense as alleged and as he described in his statement. The evidence is legally sufficient. The second issue is overruled.

In his first issue, appellant contends that he was denied effective assistance of trial counsel. Appellant argues that trial counsel's failure to object to the testimony concerning kinesics; counsel's asking questions concerning a polygraph examination; counsel's failure to object to appellant's prior statements; counsel's failure to move for an acquittal when the State rested; and counsel's failure to object to the State's cross-examination of appellant concerning his tattoos, social organization membership, and extraneous bad acts all resulted in the denial of effective assistance of counsel.

In order to determine whether appellant's trial counsel rendered ineffective assistance at trial, we must first determine whether appellant has shown that counsel's representation fell below an objective standard of reasonableness and, if so, then determine whether there is a reasonable probability that the result would have been different but for counsel's errors. *Wiggins v. Smith*, 539 U.S. 510, 520 (2003); *Strickland v. Washington*, 466 U.S. 668, 690 (1984); *Andrews v. State*, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005); *Hernandez v. State*, 988 S.W.2d 770 (Tex. Crim. App. 1999). We must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and appellant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002); *Stafford v. State*, 813 S.W.2d 503, 508-09 (Tex. Crim. App. 1991).

The record does not support appellant's contentions. Ranger Hullum testified that he had been a certified peace officer for twenty-nine years and that he had over 4,000 hours of training. He based his conclusions on his training as a law enforcement officer and on his experience as a law enforcement officer as well as on the training he had received in kinesics. Nothing in the record supports appellant's arguments that Ranger Hullum's opinion and testimony were based solely on the "unscientific expert testimony regarding 'kinesics.'"

During direct examination, the following occurred:

Q: Did the fact that you had prior offenses have anything to do with your being afraid?

A: Well, when they interviewed me, they promised me if I testified, if I -- because I told them I didn't do it, and they're like, "Well, you didn't pass the polygraph test --

Q: Okay, they told you that they didn't believe you?

A: Yes, sir.

Q: All right. When you were being interviewed that second time, was there anything unusual about that interview?

A: It was a polygraph test.

Q: Did the --

[PROSECUTOR]: Your Honor, the State must protect the record. It's not appropriate to be talking about those matters, even if the defense brings it out.

THE COURT: Why don't we take a short recess and y'all can visit about that and then we will reconvene in about five minutes.

No other mention of any polygraph was made.

When appellant volunteered that he had taken a polygraph test, trial counsel interrupted his testimony and redirected him. The second time appellant mentioned it, the State objected, and the trial court gave trial counsel time to explain the situation to appellant. Trial counsel did not ask any questions about a polygraph. Moreover, the trial court is presumed to have disregarded any improper testimony. *Ozack v. State*, 646 S.W.2d 941, 943 (Tex. Crim. App. 1983). Nothing in the record rebuts this presumption.

As the State notes, this was a bench trial, the trial court could consider the admissibility of appellant's statements at any time, and the trial court could disregard any inadmissible evidence under TEX. CODE CRIM. PROC. ANN. art. 38.22 (Vernon 2005). Therefore, whether trial counsel chose to challenge the admissibility of the statements by questioning appellant or by objecting is not error and not ineffective assistance of counsel.

Trial counsel's strategy was to allow appellant to tell his side of the story. Nothing in the record supports appellant's contentions on appeal that counsel's failure to move for an acquittal or to object to the State's cross-examination resulted in behavior that fell below an objective standard of reasonableness.

vacated and remanded on other grounds, 171 S.W.3d 888 (Tex. Crim. App. 2005)) The record reflects that trial counsel did provide reasonable effective assistance of counsel. The first issue is overruled.

The judgment of the trial court is affirmed.


JIM R. WRIGHT

CHIEF JUSTICE


August 28, 2009

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of:  Wright, C.J.,
McCall, J., and Strange, J.