Opinion filed August 28, 2009











 
 
  
 
 







 
 
  
 
 




Opinion filed August 28,
2009

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                  ___________

 

                                                          No. 11-07-00348-CR

                                           __________

 

                             JESUS ROBERTO GONZALES, Appellant

 

                                                             V.

 

                                         STATE
OF TEXAS, Appellee

 



 

                                          On
Appeal from the 91st District Court

 

                                                        Eastland
County, Texas

 

                                             Trial
Court Cause No. CR-04-20,363

 



 

                                            M
E M O R A N D U M    O P I N I O N

The
trial court convicted Jesus Roberto Gonzales of indecency with a child, found
the enhancement allegation to be true, and assessed his punishment at confinement
for twenty years.  We affirm.

Appellant
challenges the legal sufficiency of the evidence to support his conviction.  Specifically,
appellant argues that there is insufficient evidence to show that he touched
his daughter=s
genitals with the intent to arouse or gratify the sexual desire of any person. 








In
order to determine if the evidence is legally sufficient, the appellate court
reviews all of the evidence in the light most favorable to the verdict and
determines whether any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt.  Jackson v. Virginia,
443 U.S. 307, 319 (1979); Laster v. State, 275 S.W.3d 512, 517 (Tex.
Crim. App. 2009); Jackson v. State, 17 S.W.3d 664, 667 (Tex. Crim. App.
2000). The appellate court reviews the factfinder=s
weighing of the evidence and cannot substitute its judgment for that of the
factfinder.  Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997); Clewis
v. State, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996).   

Due
deference must be given to the factfinder=s
determination, particularly concerning the weight and credibility of the
evidence.  Johnson v. State, 23 S.W.3d 1 (Tex. Crim. App. 2000); Jones 
v. State, 944 S.W.2d 642 (Tex. Crim. App. 1996).  The appellate court=s role is Arestricted to guarding
against the rare occurrence when a factfinder does not act rationally.@  Laster, 275 S.W.3d
at 517.

Texas
Ranger David Hullum testified that he was contacted by the Ranger Police
Department to help with the investigation of an alleged sexual abuse of a
child.  The victim was the three-year-old daughter of appellant and his
girlfriend.  The victim had made an outcry to her mother and to her
babysitter.  Child Protective Services was contacted, but appellant refused  to
work with the agency.  The mother, the victim, and the victim=s two-year-old brother were
moved to the Noah Project in Abilene.

Ranger
Hullum testified that the victim=s
interview at the Noah Project was consistent with her outcry to her mother and
to her babysitter.  Ranger Hullum contacted appellant and arranged for an
interview.  Appellant came with family members to Ranger Hullum=s office and gave a
statement denying the sexual contact.  Appellant=s
statement was inconsistent with the victim=s
outcries and interview and with the mother=s
report.








Later,
on a different day, appellant returned with family members to Ranger Hullum=s office. Appellant
participated in two interviews.  Ranger Hullum did not participate in the first
interview that day.  During the second interview, Ranger Hullum stated that
appellant was Avery
nervous@ and Aappeared to be agitated.@  He had a hard time
maintaining eye contact when he answered questions.  Appellant admitted that he
had engaged in sexual contact with his daughter by touching her genitals while
he bathed her.  Appellant stated that both he and his daughter were unclothed
at the time.  Appellant told the officers, in his own words, that he became
aroused washing his daughter and had an erection.  Appellant then gave a
written statement admitting the offense.

Ranger
Hullum stated that this second statement was inconsistent with appellant=s first statement in which
he told Ranger Hullum that he would never touch his child in a sexual way. 
Based on his law enforcement training and experience and on his training in
kinesics (the interpretation of nonverbal communication),  Ranger Hullum
concluded that appellant had not totally disclosed his behavior toward his
daughter.  Ranger Hullum also concluded that appellant had engaged in sexual
contact with the intent to arouse and gratify his own sexual desires. 
Ranger Hullum based his conclusion on appellant=s admission that, while he was washing his
daughter=s vaginal and
buttocks areas, he had what he called a Aboner.@ 

On
cross-examination, Ranger Hullum explained that kinesics was the Astudy of the physiological
changes that occur when a person is under stress and gives deceptive answers.@  Ranger Hullum testified
that he believed that kinesics as well as interviewing involved both science
and art.  Ranger Hullum stated:

I
think it=s both
because you have to understand what the physiological changes are and you have
to be adept at recognizing those changes, and you have to be experienced enough
through the hundreds of interviews that I have ever conducted of interviewing
people that told me the truth and of people that were being deceptive.  So, I=m saying it=s a little of both.

 

Texas
Department of Public Safety Sergeant Matthew Mull testified that he was
assigned to the Criminal Intelligence Service and that one of his duties was to
assist local law enforcement agencies with the interviewing of persons
suspected of criminal activity.  He advised appellant of his rights and
conducted two interviews.  In the first interview, appellant denied any sexual
contact with his daughter.  In the second interview, appellant stated that,
while he was bathing his daughter=s
vaginal and buttocks areas, he obtained an erection.  Sergeant Mull stated that
appellant had used the word Aboner@ to describe his erection. 
Sergeant Mull also testified that, based on his training and experience, he did
not believe that appellant completely disclosed his behavior involving this
offense.








Appellant
testified in his own behalf.  Appellant stated that his first statement where
he stated AI never
touched my daughter in a sexual way@
was correct.  Every word of his first statement reflected what he had said.  He
stated that he did not know what the words Avoluntarily,@ Aduress,@
Aleniency,@ or Aknowingly@
meant but that he did know what Aintelligently@ and Awaive@ meant.  He did not
remember if Ranger Hullum had read the second statement to him.  Appellant
testified that Ranger Hullum did not tell him what the bold type on the second
statement (which was appellant=s
admission) said.  Appellant stated that he only signed the second statement
because the officers were yelling at him and told him that they would help him
out, if he signed the statement.

Appellant
testified that his children were in foster care in New Mexico at the time of
trial.  When they lived together as a family, appellant took care of the
children.  He fed them, bathed them, and got their clothes washed.  He would
clean the apartment.  When he could not, he would pay his thirteen-year-old
niece to clean it.  He stated that, on the day in question, he came home from
work to find the children were dirty.  He bathed both of them and never touched
his daughter in a sexual way.  He stated that he did not get an erection while
he was bathing the children.  He stated that he tried to keep the children
clean because Athe
social service@ was after
them.  He also stated that his girlfriend would not take care of the children.

On
cross-examination, appellant stated that a person who touched a child in a
sexual way should be put in jail and should not be let out.  Appellant said
that he did not know what the word Aerection@ meant, but he did know
what the word Aboner@ meant.  Appellant stated
that his daughter called her private area her Acoco.@  He did not know why his
daughter would have said that her coco hurt after a bath or after she had slept
with appellant, her mother, and her brother in the same bed.  Appellant also
testified that, when he bathed the children, he and the children would be
naked.  His daughter faced him in the bathtub.

Marie
Guitierrez testified that appellant was her uncle.  Guitierrez stated that she
saw the family about once a day, that appellant=s
girlfriend did not take care of the children, and that appellant took care of
the children.  Appellant paid her to cook and clean.  She would watch the
children when appellant went to work because his girlfriend would Ajust leave out.@  Appellant never did
anything that made her feel uncomfortable.








Monica
Enriquez, appellant=s
second cousin, testified that she was over at appellant=s home almost everyday.  She was eleven or
twelve at the time.  She said that appellant took care of the children more than
his girlfriend.  Enriquez stated that she would go over to appellant=s home because the
girlfriend was Ahardly
there.@  Appellant
bathed the children most of the time.  He would leave the door open.  Appellant
never did or said anything that made her feel uncomfortable.        Daniella
Armenta testified that appellant was her uncle and that he paid her to clean
his home.  She would clean every time appellant got paid.  Appellant took care
of the children.  Armenta also testified that she would cook for appellant. 
She did not see appellant bathe the children.  Armenta testified that appellant
never said anything sexual to her and that he never tried to Acome on@ to her in any way.

Maria
Monclova testified that she lived across the apartment complex from the
family.  Monclova stated that she was in their home almost every day.  Appellant
took care of the children.  Monclova had had the family over to her home to
eat.  She testified that she would not eat at their home because appellant=s girlfriend Ahad her house all dirty all
the time.@

Mary
Jane Mackey testified that she was related to both appellant and his
girlfriend.  She was appellant=s
sister, and she had been married to his girlfriend=s uncle.  Appellant took care of the couple=s children.  When his
girlfriend left Ranger, she dropped the children off at Mackey=s house in Abilene and left
them for a week.  Mackey testified that appellant had watched her four
children, their sister=s
three children, and their brother=s
five children and that no one had ever commented that appellant had made or did
anything sexually suggestive.

The
trial court, as the finder of fact, was the sole judge of the weight and
credibility of the testimony.  Adelman v. State, 828 S.W.2d 418 (Tex.
Crim. App. 1992); DeBolt v. State, 604 S.W.2d 164 (Tex. Crim. App.
1980); Austin v. State, 794 S.W.2d 408 (Tex. App.CAustin 1990, pet. ref=d).  This court has the authority to disagree
with the factfinder=s
determination Aonly
when the record clearly indicates such a step is necessary to arrest the
occurrence of a manifest injustice.@ 
Johnson, 23 S.W.3d at 9.  A rational factfinder could have concluded
that appellant committed the offense as alleged and as he described in his
statement.  The evidence is legally sufficient.  The second issue is overruled.








In
his first issue, appellant contends that he was denied effective assistance of
trial counsel.  Appellant argues that trial counsel=s failure to object to the testimony
concerning kinesics; counsel=s
asking questions concerning a polygraph examination; counsel=s failure to object to
appellant=s prior
statements; counsel=s
failure to move for an acquittal when the State rested; and counsel=s failure to object to the
State=s
cross-examination of appellant concerning his tattoos, social organization
membership, and extraneous bad acts all resulted in the denial of effective
assistance of counsel.

In
order to determine whether appellant=s
trial counsel rendered ineffective assistance at trial, we must first determine
whether appellant has shown that counsel=s
representation fell below an objective standard of reasonableness and, if so,
then determine whether there is a reasonable probability that the result would
have been different but for counsel=s
errors.  Wiggins v. Smith, 539 U.S. 510, 520 (2003); Strickland v.
Washington, 466 U.S. 668, 690 (1984); Andrews v. State, 159
S.W.3d 98, 101 (Tex. Crim. App. 2005); Hernandez v. State, 988
S.W.2d 770 (Tex. Crim. App. 1999).   We must indulge a strong presumption that
counsel=s conduct fell
within the wide range of reasonable professional assistance, and appellant must
overcome the presumption that, under the circumstances, the challenged action
might be considered sound trial strategy.  Bone v. State, 77 S.W.3d 828,
833 (Tex. Crim. App. 2002); Stafford v. State, 813 S.W.2d 503,
508-09 (Tex. Crim. App. 1991).

The
record does not support appellant=s
contentions.  Ranger Hullum testified that he had been a certified peace
officer for twenty-nine years and that he had over 4,000 hours of training.  He
based his conclusions on his training as a law enforcement officer and on his
experience as a law enforcement officer as well as on the training he had
received in kinesics.  Nothing in the record supports appellant=s arguments that Ranger
Hullum=s opinion and
testimony were based solely on the Aunscientific
expert testimony regarding >kinesics.=@

During
direct examination, the following occurred:

Q:
Did the fact that you had prior offenses have anything to do with your being
afraid?

 

A:
Well, when they interviewed me, they promised me if I testified, if I --
because I told them I didn=t
do it, and they=re
like, AWell, you didn=t pass the polygraph test
--

 








Q: Okay, they
told you that they didn=t
believe you?

 

A: Yes, sir.

 

Q: All right. 
When you were being interviewed that second time, was there anything unusual
about that interview?

 

A: It was a
polygraph test.

 

Q: Did the --

 

[PROSECUTOR]: Your
Honor, the State must protect the record.  It=s
not appropriate to be talking about those matters, even if the defense brings
it out.

 

THE COURT: Why
don=t we take a short
recess and y=all can
visit about that and then we will reconvene in about five minutes.

 

No other mention of any polygraph was made.  

When
appellant volunteered that he had taken a polygraph test, trial counsel
interrupted his testimony and redirected him.  The second time appellant
mentioned it, the State objected, and the trial court gave trial counsel time
to explain the situation to appellant.  Trial counsel did not ask any questions
about a polygraph.  Moreover, the trial court is presumed to have disregarded
any improper testimony.  Ozack v. State, 646 S.W.2d 941, 943 (Tex. Crim.
App. 1983).  Nothing in the record rebuts this presumption.

As
the State notes, this was a bench trial, the trial court could consider the
admissibility of appellant=s
statements at any time, and the trial court could disregard any inadmissible
evidence under Tex. Code Crim. Proc. Ann.
art. 38.22 (Vernon 2005).  Therefore, whether trial counsel chose to challenge
the admissibility of the statements by questioning appellant or by objecting is
not error and not ineffective assistance of counsel.

Trial
counsel=s strategy was
to allow appellant to tell his side of the story.  Nothing in the record
supports appellant=s
contentions on appeal that counsel=s
failure to move for an acquittal or to object to the State=s cross-examination
resulted in behavior that fell below an objective standard of reasonableness.  








 vacated
and remanded on other grounds, 171 S.W.3d 888 (Tex. Crim. App. 2005)) The
record reflects that trial counsel did provide reasonable effective assistance
of counsel.  The first issue is overruled.

The
judgment of the trial court is affirmed.

 

 

JIM R. WRIGHT

CHIEF JUSTICE

 

August 28, 2009

Do not publish. 
See Tex. R. App. P. 47.2(b).

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.