**Helen STEINBACH, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 03-97-00773-CR.

Court of Appeals of Texas,
Austin.

Nov. 13, 1998.

Anthony P. Griffin, Anthony P. Griffin, Inc., Galveston, for Appellant.

Richard J. Miller, County Attorney, Belton, for State.

Before Chief Justice YEAKEL, Justices B.A. SMITH and ONION.*

JOHN F. ONION, Jr., Justice (Retired).

This is an appeal from a Class B misdemeanor conviction for prostitution. *See* Tex. Penal Code Ann. § 43.02(a)(1) (West 1994). The jury found appellant Helen Diane Steinbach guilty. The trial court assessed her punishment at 180 days in the county jail and a fine of $500. The imposition of the sen-

tence was suspended and appellant was placed on community supervision for a period of eighteen months. We will affirm.

## POINTS OF ERROR

Appellant advances two points of error challenging the sufficiency of the evidence "as a matter of law" because the proof failed to show (1) sexual contact (skin upon skin) and (2) an agreement to engage in sexual contact, both being required in a prosecution for prostitution as charged. We shall consider both contentions together.

## THE STATUTE

Section 43.02 provides in pertinent part:

(a) A person commits an offense if he knowingly

(1) offers to engage, agrees to engage, or engages in sexual conduct for a fee; ...

Tex. Penal Code Ann. § 43.02(a)(1) (West 1994).

" 'Sexual conduct' includes deviate sexual intercourse, sexual contact and sexual intercourse." Tex. Penal Code Ann. § 43.01(4) (West 1994). " 'Sexual contact' means any touching of the anus, breast, or any part of the genitals of another person with intent to arouse or gratify the sexual desire of any person." Tex. Penal Code Ann. § 43.01(3) (West 1994).

The information in the instant case charged in part that appellant engaged in sexual conduct, "to wit: sexual contact with Houston Johnson for a fee."[1] Thus, the information limited the prosecution to a specific type of sexual conduct. Conviction may be had only upon these allegations. *See Thompson v. State,* 577 S.W.2d 497, 498 (Tex. Crim.App.1979).

## STANDARD OF REVIEW

■ The standard for reviewing the legal sufficiency of the evidence is whether, viewing the evidence in the light most favorable

---

* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1988).

1. We do not find any objection to the information, its form or substance. Therefore, appellant

has waived any right to complain on appeal. Tex.Code Crim. Proc. Ann. art. 1.14(b) (West Supp.1998); *Lockett v. State,* 874 S.W.2d 810, 816 (Tex.App.—Dallas 1994, pet. ref'd) (citing *Studer v. State,* 799 S.W.2d 263, 271 (Tex.Crim. App.1990)).

to the jury's verdict, any rational trier of fact could have found beyond a reasonable doubt the essential elements of the offense charged. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Skillern v. State,* 890 S.W.2d 849, 879 (Tex. App.—Austin 1994, pet. ref'd). The standard of review is the same in both direct and circumstantial evidence cases. *See Green v. State,* 840 S.W.2d 394, 401 (Tex.Crim.App. 1992), *cert. denied,* 507 U.S. 1020, 113 S.Ct. 1819, 123 L.Ed.2d 449 (1993).

In our review of the legal sufficiency of the evidence, as raised by appellant, we must consider all the evidence which the jury was permitted, properly or improperly, to consider. *See Johnson v. State,* 871 S.W.2d 183, 186 (Tex.Crim.App.1993), *cert. denied,* 511 U.S. 1046, 114 S.Ct. 1579, 128 L.Ed.2d 222 (1994); *Rodriguez v. State,* 819 S.W.2d 871, 873 (Tex.Crim.App.1991). The legal sufficiency of the evidence is measured against a hypothetically correct jury charge. *See Malik v. State,* 953 S.W.2d 234, 240 (Tex.App.— Austin 1997, no pet.). In analyzing a challenge to the legal sufficiency of the evidence, the reviewing court does not realign, disregard, or weigh the evidence. *Rodriguez v. State,* 939 S.W.2d 211, 218 (Tex.App.—Austin 1997, no pet.).

The jury is the exclusive judge of the facts proved and the weight to be given the testimony. It is the judge of the credibility of the witnesses. *See* Tex.Code Crim. Proc. Ann. art. 38.04 (West 1979); *Adelman v. State,* 828 S.W.2d 418, 421 (Tex.Crim.App. 1992). The jury is free to accept or reject any or all of the evidence presented by either party. *See Saxton v. State,* 804 S.W.2d 910, 914 (Tex.Crim.App.1991). Reconciliation of evidentiary conflicts is solely the function of the trier of fact. *See Miranda v. State,* 813 S.W.2d 724, 733–34 (Tex.App.—San Antonio 1991, pet. ref'd).

## FACTS

In light of the nature of appellant's two contentions, the facts must be discussed in some detail. Chief of Police Michael Gentry of the Harker Heights Police Department testified that from mid-summer until December 1996, his department conducted an undercover investigation of four sexually-oriented businesses located on Veterans Memorial Boulevard in the city. One of the businesses was known as "Fantasy Lingerie." Chief Gentry stated that numerous complaints concerning prostitution, obscenity, and public lewdness were received about the four businesses, and some sixteen to twenty percent of police activity in the city stemmed from the four businesses. The police department employed an "outside" law enforcement officer, Houston Johnson, as an undercover operative. Johnson was instructed to be a passive witness and to remain clothed at all times during his investigation.

About 5:00 p.m., on September 16, 1996, Johnson went to the "Fantasy Lingerie" in company with Sergeant John Warford, who remained outside to attempt audio monitoring. Johnson was dressed in blue jeans and a short-sleeve shirt and wore a recorder on his body.[2] When he entered the business establishment he was met by a woman whom he identified as appellant. She was dressed in a white lacy bra and panties and high heeled shoes. Appellant told Johnson that her name was Roxy and asked if he wanted $20 for ten minutes or $30 for 30 minutes. Following his instructions, Johnson asked for the 30 minute performance. He paid appellant $30. Appellant led Johnson to a back room with a stage and seated him in a plastic chair. She left the room for a few minutes. Upon her return she explained to Johnson that the $30 was for the management and that if he wanted her to dance he would have to pay another $20. "And she went on to explain that the more money that I paid her or tipped her, the more clothing she would remove, the more erotic she would dance, the more she could perform." Johnson gave her $20 and she began dancing around the chair and on the stage in her bra and underwear. Upon the payment of another $20 appellant removed her bra and began dancing topless. When Johnson gave her "a third $20," appellant pushed Johnson's legs apart as he was seated in the chair, turned her back and she "basically just ground and rubbed on my

---

**2.** The recording was unintelligible and was not used at trial.

crotch with her rear." The contact was with Johnson's penis through his pants. Upon the payment of the fourth $20 bill, appellant removed her panties and was totally nude except for her shoes where she placed the money. Johnson explained that he had an erection and appellant's intent appeared to be to arouse his sexual desires "and to get more money out of me." Johnson gave appellant still another $20 and she placed her right foot on the chair and manipulated her genitalia with her fingers. When another $20 exchanged hands, appellant repeated the earlier procedure with her foot on Johnson's leg. She then sat in Johnson's lap in grinding motion making contact with his penis through his pants. Upon the "seventh 20 dollar bill" being paid, appellant repeated this procedure. When Johnson gave appellant the eighth $20 bill, she danced around, masturbating herself, and then did "the heaviest grinding on my crotch that she had done the whole time, just really hard." She finished her performance up on the stage. Appellant then dressed and left the room. Including the first $30, Johnson paid appellant $190.

Patricia Harris, the owner of "Fantasy Lingerie" testified the business had a license for nude modeling; that each model worked on the basis of tips earned; that each dance is video-monitored by another employee; that lap dances are not permitted; and that she was present on the occasion in question and did not notice any lap dancing by appellant. Ruth Mallory, the manager, testified that she did not see appellant touch Johnson or perform a lap dance. She explained that if she had seen a lap dance, she would have stopped it and fired appellant.

The 23–year–old appellant admitted that she performed nude dancing at the "Fantasy Lingerie" at the time in question. She denied, however, that she ever touched Johnson or had sexual contact with him when she performed a nude dance for him. She agreed that she usually told customers that her tip standard was $20, which was a fee not only in appreciation for the performance al-

ready given but in return for her willingness "to do something more."

The trial court submitted a hypothetically correct jury charge based upon the offense alleged, to which appellant offered no objection. The jury found appellant guilty of prostitution.

### FLESH UPON FLESH?

Appellant urges that a prosecution for prostitution under section 43.02(a)(1) by engaging in sexual contact requires a flesh upon flesh touching of the anus, breast, or any part of the genitals of another person. She contends that this is a question of first impression. The parties have not cited any cases dealing with this precise issue and we have found none in the prostitution cases reviewed.

In *Resnick v. State,* 574 S.W.2d 558 (Tex. Crim.App.1978), the defendant was convicted of public lewdness by an act of sexual contact under section 21.07 of the Penal Code then in effect.[3] Sexual contact then defined in section 21.01(2) was similar to the definition of sexual contact for prostitution cases presently found in section 43.01(3).

In *Resnick,* the defendant, while in an adult movie house, placed his hand on that portion of trousers which covered the police officer's genitals. This was sufficient to constitute "sexual contact" and to establish the offense of public lewdness. It was held that "touching" within the statutory definition of sexual contact means to perceive by the sense of feeling and the interposition of a layer of fabric is not sufficient to prevent a touching. The court also observed:

> Were we to accept appellant's contention that he did not "touch" the officer's genitals because no flesh-to-flesh contact was made, absurd results would follow. Under such an analysis, a defendant who thrust his hand beneath a victim's undergarments and fondled his or her genitals in a public place could not be prosecuted for public lewdness if he was wearing a glove.

*Resnick,* 574 S.W.2d at 560.[4]

In *Guia v. State,* 723 S.W.2d at 763 (Tex. App.—Dallas 1986, pet. ref'd), the same re-

---

**3.** The statute is set forth in the opinion. *See Resnick,* 574 S.W.2d at 559. *See now* Tex. Penal Code Ann. § 21.07 (West Supp.1994) (unchanged except for minor amendments).

**4.** In support of its conclusion, the *Resnick* court

sult was reached in a prosecution for indecency with a child. *Resnick* was cited with approval. *Id.* at 766. *See also Cruz v. State,* 742 S.W.2d 545, 548 n. 2 (Tex.App.—Austin 1988, no pet.); *Zewoldermariam v. State,* 730 S.W.2d 354, 355 (Tex.App.—Dallas 1987, no pet.); *Balash v. State,* 720 S.W.2d 878, 879 (Tex.App.—Houston [14th Dist.] 1986, pet. ref'd); *cf. Byrum v. State,* 762 S.W.2d 685, 688–89 (Tex.App.—Houston [14th Dist.] 1988, no pet.). Citing *Resnick* and *Cruz,* the same result was reached in an aggravated sexual assault case. *See Rodda v. State,* 926 S.W.2d 375, 378 n. 14 (Tex.App.—Fort Worth 1996, pet. ref'd). *Fletcher v. State,* 852 S.W.2d 271 (Tex.App.—Dallas 1993, pet. ref'd), involved an injury to a child conviction. There, the court, relying upon *Resnick* and *Guia,* wrote:

> We cannot accept appellant's hyper-technical distinction between directly kicking a child in the back and kicking an infant's back through a cloth carrier. In fact, we fail to see any difference in this situation and in a child sustaining a blow through its clothing. Were we to accept appellant's contention that there was no offense because of the interposition of a layer of fabric, a variety of senseless results would follow.

*Id.* at 274.

We find no reason why *Resnick* and other cases cited would not control in this prosecution for prostitution under the particular charge, the statutory definition of sexual contact, and the facts of the instant case. Appellant, however, relies upon *Donoho v. State,* 643 S.W.2d 698 (Tex.Crim.App.1982), a case of public lewdness involving deviate sexual intercourse in a public place under section 21.07(a)(2) in effect at the time.[5] "Deviate sexual intercourse means (A) any contact between any part of the genitals of one person and the mouth or anus of any person or (B) the penetration of the genitals or the anus of another person with an object." *See* Tex. Penal Code Ann. § 21.01(1)(A)(B) (West

1994).[6] Rejecting the court of appeals' holding that flesh upon flesh was not required to support the conviction, the Court of Criminal Appeals, noting that deviate sexual intercourse under section 21.01(1) was a successor to the sodomy statute, held that "any contact between" a part of the genitals of one person and the mouth of another person contemplates "either penetration of the mouth by the bared genitalia or placing the mouth directly on the genitalia of another human being." The issue in *Donoho* was whether an offense occurred when the defendant's mouth touched the fabric of the trousers covering the genitalia of another man in a public place. The court held that the offense of public lewdness by an act of deviate sexual intercourse under section 21.07(a)(2) did not occur because the offense as alleged required flesh upon flesh. Contrary to appellant's contentions, *Donoho* did not overrule *Resnick* expressly or implicitly. The holding in *Donoho* has not been expanded beyond the particular fact situation presented. It has been found inappropriate in other contexts. *See Zewoldermariam,* 730 S.W.2d at 355; *Thompson v. State,* 665 S.W.2d 188, 190 (Tex. App.—Houston [1st Dist.] 1984, no pet.). We do not find it controlling in this prostitution case.

### NO AGREEMENT?

In the second complaint of the lack of sufficient evidence, appellant urges that the proof failed to show any "agreement to engage in the act of prostitution." Appellant argues that there is no evidence to show that she "negotiated" a price for sexual favors; that she engaged in the legal act of nude dancing and informed the complainant Johnson that the more she was tipped or paid the more creative the dance would become. In particular, she contends that there was no discussion with Johnson as to what creativeness meant or what sum of money would cause sexual conduct to occur.

---

5. *See* Tex. Penal Code Ann. § 21.07(a)(2) (West 1994). The current version of section 21.07 is unchanged except for minor amendments not material here.

6. The current code is cited for convenience. It did not change the former law.

cited *Miles v. State,* 157 Tex.Crim. 188, 247 S.W.2d 898 (1952), a fondling case, which rejected a claim that there had to be flesh-to-flesh contact to constitute fondling. *See Resnick,* 574 S.W.2d at 559.

Appellant relies upon *Roper v. State*, 652 S.W.2d 398 (Tex.Crim.App.1983), where the court reversed the prostitution conviction. The defendant was charged with engaging in sexual conduct for a fee as in this case. Two undercover police officers went to the Golden Girl Studio, a massage parlor, where they paid a Michael Brownell $70 for two $35.00 contact sessions of thirty minutes. One officer went with the defendant Roper to a room and the other officer went to a separate room with the defendant Pierre. Both couples disrobed and engaged in acts clearly within the statutory definition of sexual contact. An intercom announcement informed them when the thirty minute session had expired.

The appellate court noted that the officers had paid Brownell for massages and no money was exchanged between the officers and the defendants. In concluding that the evidence was insufficient to show that the defendants had "engaged in sexual conduct for a fee," the 5–4 opinion held that there was "no evidence that either appellant negotiated a price for her sexual favors [*McCarty v. State*, 616 S.W.2d 194 (Tex.Crim.App.1981); *Morris v. State*, 565 S.W.2d 534 (Tex.Crim.App. 1978) ], or received money for her sexual favors. [*West v. State*, 626 S.W.2d 159 (Tex. App.—Beaumont 1981) ]." *Roper*, 652 S.W.2d at 399.

*Roper*, a post-*Jackson v. Virginia*[7] case, did not apply any standard of review to determine the legal sufficiency of the evidence.[8] *See Austin v. State*, 794 S.W.2d 408, 413 (Tex.App.—Austin 1990, pet ref'd.).

Unlike *Roper*, appellant was alone with Johnson at all times, and she personally received all the money paid. There was no manager who took the initial payment for a purportedly legal massage or dance. Appellant did not negotiate. She simply told Johnson that the more he paid the more clothing she would remove, the more erotic the dance would become, and the more she could "perform." Appellant stated that her standard tip or payment was $20. Johnson acknowledged that there was no express discussion about a particular sexual act. The evidence showed, however, that after several payments of $20 each, appellant did a topless lap dance with her panties still on. Each time after the sixth, seventh, and eighth payment of $20, the nude appellant sat in Johnson's lap and ground her genitalia against John-

---

7. 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

8. In addition, *McCarty*, *Morris*, and *West*, which were cited in *Roper* and now are relied upon by appellant were convictions for *offering* to engage in sexual conduct for a fee, not engaging in sexual conduct for a fee as in *Roper* and this cause. In *West*, there was an exchange of money, but the court did not hold that a fee must be paid in order to constitute the offense. In fact, a fee need not be paid. *See Robinson v. State*, 643 S.W.2d 141, 142 (Tex.Crim.App.1982); *Austin*, 794 S.W.2d at 413 n. 2. *McCarty* noted "protracted negotiations" as evidence supporting the element of offering to engage in sexual conduct for a fee, not that negotiations were always essential to a prostitution conviction. In *Morris*, without the citation of any case law, the evidence was held sufficient to constitute an offer to engage in sexual conduct for a fee. No mention of negotiations was made. *McCarty*, *Morris*, and *West* do not hold that there must be negotiations as to a fee, or that money must exchange hands before a prostitution conviction could be sustained. The citation of these cases in *Roper* is confusing.

Section 43.02(a)(1) provides for three modes or manners of committing the offense of prostitution. A person commits an offense if he or she knowingly (1) offers, (2) agrees, or (3) engages in sexual conduct for a fee payable to the actor. *See Mattias v. State*, 731 S.W.2d 936, 937 (Tex. Crim.App.1987). "Each act is disjunctive." *Id.* (quoting *West v. State*, 626 S.W.2d 159, 160 (Tex. App.—Beaumont 1981, pet. ref'd)). A person may knowingly *offer* or *agree* to engage in sexual conduct for a fee and commit prostitution without having the intent to consummate the sexual conduct. *See Mattias*, 731 S.W.2d at 937. "The intent that must accompany future sexual conduct need not accompany the offer or agreement to engage in sexual conduct." *Cardenas v. State*, 640 S.W.2d 291, 292 (Tex.Crim.App.1982). Although the intent to arouse or gratify the sexual desire of any person is an element of the offense of actually engaging in sexual conduct for a fee, it is not an element of the offense of offering or agreeing to engage in sexual conduct for a fee. *Id.* Even these latter two means of committing the offense under section 43.02(a)(1) are distinct. *See Milczanowski v. State*, 645 S.W.2d 445, 446 (Tex.Crim.App.1983).

The term "fee" within the statute means payment in return for professional services rendered. *See Tisdale v. State*, 640 S.W.2d 409, 413 (Tex.App.—San Antonio 1982, pet. ref'd). This does not mean, however, that there must be an exchange of money before the offense is completed. *See Robinson*, 643 S.W.2d at 142; *Austin*, 794 S.W.2d at 413 n. 2.

son's sexual organ, with the grinding becoming heavier after each $20 payment.

■ Proof of a culpable mental state generally relies upon circumstantial evidence and may be inferred from the circumstances under which the prohibited act occurred. *Dillon v. State*, 574 S.W.2d 92, 94 (Tex.Crim. App.1978); *Skillern*, 890 S.W.2d at 880. Intent and knowledge can be inferred from the acts, words, and the conduct of the accused. *Dues v. State*, 634 S.W.2d 304, 305 (Tex. Crim.App.1982); *Parramore v. State*, 853 S.W.2d 741, 745 (Tex.App.—Corpus Christi 1993, pet. ref'd); *Castellano v. State*, 810 S.W.2d 800, 807 (Tex.App.—Austin 1991, no pet.).

■ Certainly the culpable mental state of knowledge could have been inferred by the jury in this case. The facts showed that a fee was paid and sexual contact occurred and other fees were paid with the understanding, explicitly or implicitly, that similar acts, contacts, and performances would follow the continued flow of money, and they did.

■ Moreover, the element of intent to arouse or gratify the sexual desire of any person could be inferred by the trier of fact by appellant's acts, conduct, and words as reflected by this record. *See Ryan v. State*, 635 S.W.2d 159, 162 (Tex.App.—Houston [1st Dist.] 1982, no pet.).

Viewing all the evidence, both circumstantial and direct, in the light most favorable to the jury's verdict, we conclude that a rational trier of fact could have found beyond a reasonable doubt all the essential elements of the offense charged. We reject appellant's two contentions as to the legal sufficiency of the evidence. Points of error one and two are overruled.

The judgment is affirmed.