TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-99-00339-CR


NO. 03-99-00340-CR






Patrick Hall, Appellant




v.




The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT


NOS. 0991261 & 099-262, HONORABLE BOB PERKINS, JUDGE PRESIDING







 Appellant Patrick Hall was convicted by a jury of taking or attempting to take a
weapon from a peace officer (our cause number 03-99-00339-CR) and of assaulting a public
servant (our cause number 03-99-00340-CR). See Tex. Penal Code Ann. §§ 22.01, 38.14 (West
Supp. 2000). The jury assessed punishment, enhanced by three previous felony convictions, at
confinement for twenty years in the first cause and ninety-nine years in the latter. In two issues,
appellant argues the evidence is factually insufficient to support the verdicts. We will affirm both
judgments.


Analysis

 In reviewing the factual sufficiency of the evidence, we view all of the evidence
without the prism of "in the light most favorable to the prosecution" and set aside the verdict only
if it is so against the overwhelming weight of the evidence as to be clearly wrong and unjust. See
Rojas v. State, 986 S.W.2d 241, 247 (Tex. Crim. App. 1998); Reina v. State, 940 S.W.2d 770,
773 (Tex. App.--Austin 1997, pet. ref'd).


Factual Summary

 On September 13, 1998, William Foreman, a 74-year-old man driving through
Austin with his wife and sister, had car trouble as he drove south on IH 35. He left his wife and
sister with the car and walked to a service station, where he asked appellant for a ride to a nearby
Wal-Mart. Appellant agreed to drive Foreman in exchange for $10; a woman rode with them. 
As they drove towards the Wal-Mart, Foreman saw his car had been moved, so he asked appellant
to take him back to the service station. Foreman alleged that as he got out of the car, appellant
and the woman tried to rob him. Appellant was acquitted of attempted robbery in an earlier trial.

 Foreman reported the robbery attempt to Officer O'Connor, an off-duty Austin
Police Department officer who was at the service station, and pointed out appellant's car as it
drove away. Foreman picked appellant out of a lineup and identified him at trial.

 O'Connor testified that on September 13 he finished his shift and began to drive
home in his personal, unmarked car. He removed his utility belt that held his gun and other
equipment, and was wearing a short-sleeved shirt with APD patches on the shoulders and his APD
badge. He passed Foreman's car on the side of the road, stopped to help Foreman's wife and
sister start the car, and followed them to the station. At the station, Foreman told O'Connor a
black male and an Asian female had tried to rob him, and described and pointed out appellant's
car as it drove away. 

 As O'Connor continued his drive home, he spotted appellant's car at a nearby 7-Eleven store, and saw a black male standing next to the driver's side and a woman sitting in the
passenger's seat. O'Connor parked his car behind appellant, blocking his exit. O'Connor got out
of his car, holding his gun at the level of appellant's shoulder. He ordered appellant to walk to
the back of appellant's car and asked a bystander to call 911 to report that an officer was in need
of assistance. Appellant walked towards the back of the car but stopped before he got there. 
O'Connor pulled appellant to the back of the car by his belt and told him to put his hands on the
car. O'Connor testified that appellant kept taking his hands off the car and turning around.

 O'Connor ordered the woman out of the car. As she began to get out, appellant
turned and grabbed O'Connor's gun and arms. O'Connor struggled with appellant and the gun
discharged, firing a bullet into the trunk of appellant's car. O'Connor believed appellant's finger
had pulled the trigger. At that point, O'Connor said he was frightened for his life and tried to
shoot appellant, but a round was jammed in the gun's chamber and it would not fire. O'Connor
testified he told appellant the gun was jammed and that appellant should run. When appellant
continued to struggle for the gun, O'Connor ejected the ammunition clip, making it impossible
to fire the gun. O'Connor again told appellant the gun would not fire and to run. O'Connor said
appellant wrested the gun away and ran towards where O'Connor thought the ammunition clip had
fallen. O'Connor followed and kicked appellant as he bent over. Appellant broke free and got
back into his car and O'Connor sprayed pepper spray into appellant's face. The pepper spray did
not appear to affect appellant, who repeatedly backed his car into O'Connor's car until he had
enough room to drive over the curb and out of the parking lot.

 O'Connor picked appellant out of a lineup and identified him at trial. The woman
riding with appellant had not been located at the time of the trial. O'Connor suffered cuts,
scratches, and bruises on his arms, wrists, hands, and knee during the struggle, and said he was
very frightened that appellant was going to kill him. O'Connor testified that he had made poor
decisions in the way he handled the situation. O'Connor denied hitting appellant with his gun
before the struggle.

 Valerie Capetillo, the bystander asked to call 911, testified that she saw a "fully
dressed police officer" pull his car behind appellant's car and get out with his gun pulled. She
asked the store clerk to call 911 and watched from inside the store as O'Connor ordered appellant
to the back of the car. Capetillo said while O'Connor was distracted by the woman, appellant
turned and grabbed for the gun. Capetillo said it appeared that appellant was "mad" and trying
to take the gun. After appellant drove away, Capetillo said O'Connor was shaking and looked
scared and nervous. Capetillo did not see O'Connor use force before the struggle.

 Deborah Ellis was the store clerk who called 911 at Capetillo's request. Ellis saw
a "uniformed police officer" standing behind a parked car, pointing his gun at the back shoulder
of a black male. Ellis said O'Connor looked like he was trying to arrest appellant, and that
appellant turned around and struggled for the gun. Ellis saw appellant get into his car as
O'Connor sprayed him with pepper spray, which had no effect. Ellis did not see O'Connor strike
appellant, act unreasonably, or threaten to kill appellant.

 Michael Roeskovich testified he pulled into the 7-Eleven parking lot that morning
and saw a car parked sideways, blocking the exit of another car. He saw a man who looked like
"a police officer or security guard" trying to frisk another man. Roeskovich could not tell if
O'Connor was a police officer or a guard because the patch on O'Connor's sleeve was creased
and he was not wearing his utility belt. As O'Connor tried to frisk appellant, appellant suddenly
turned around and tried to take O'Connor's gun. Roeskovich went behind his car; he heard the
gun fire and heard O'Connor tell appellant to run because O'Connor no longer had a weapon. 
Roeskovich did not see O'Connor use any unreasonable force or hit appellant.

 Appellant testified on his own behalf that he did not know the woman with him and
that he was simply giving her a ride. He admitted agreeing to drive Foreman in exchange for
$10. He denied trying to rob Foreman, and said he stopped the woman from robbing Foreman.

 Appellant testified that he stopped at the 7-Eleven and told the woman to get out
of the car. He said a small, green, unmarked car pulled behind him and a man jumped out of the
car and pointed a gun at him. Appellant denied resisting O'Connor. He said O'Connor was
wearing a uniform but not a hat or utility belt, and did not identify himself as a police officer or
tell appellant he was being detained or was under arrest; appellant said he thought O'Connor was
going to kill him. Appellant denied moving his hands from the car. He said he asked why
O'Connor was pointing the gun at him and told O'Connor the woman had tried to rob Foreman. 
Appellant testified O'Connor hit him once in the head with the gun, and then tried to push him
onto the car. Appellant said he feared for his life, so he spun around and threw out his arm. 
Appellant said O'Connor fired the gun, at which point appellant let go and backed away as
O'Connor took several steps backwards and tried to shoot appellant. Appellant said he thought
O'Connor was trying to kill him, so he continued to struggle. Appellant said he was not trying
to fight O'Connor or to take the gun, but was fighting to keep it pointed away from him and to
keep O'Connor from shooting him. Appellant denied trying to pick up the gun or the ammunition
clip, and said he was trying to get away. He denied that he would have shot O'Connor if he had
gotten the gun loaded; he said he would have returned it even though he believed O'Connor was
going to kill him. Appellant heard O'Connor tell him to run to which he replied he had no reason
to run because he had not done anything wrong. When O'Connor told him to run a second time,
appellant walked to his car. O'Connor did not move his car, and instead sprayed appellant with
pepper spray, at which time appellant backed into O'Connor's car and drove away.

 On direct examination, appellant testified he did not see O'Connor's badge and did
not think O'Connor was a police officer. However, under cross-examination, appellant said he
figured O'Connor was a police officer who was stopping him because the woman had tried to rob
Foreman. When asked to read his testimony from the trial for attempted robbery, appellant said
he did not remember answering "Yes, ma'am" to the question of whether he knew O'Connor was
a police officer. Reading his prior testimony, appellant said, "I say I remember him being a
police officer, I figured he was a police officer." Appellant heard O'Connor tell Capetillo to call
911.


Taking or attempting to take an officer's weapon

 Appellant argues the evidence is factually insufficient to support the finding that
he intended to harm O'Connor. We disagree.

 A defendant commits an offense under section 38.14 of the Texas Penal Code if
he "intentionally or knowingly and with force takes or attempts to take from a peace officer . .
. the officer's firearm . . . with the intention of harming the officer or a third person." Tex.
Penal Code Ann. § 38.14(b) (West Supp. 2000). The defendant is presumed to have known that
the person confronting him was a peace officer if he identified himself as an officer or wore a
distinctive uniform or badge. See id. § 38.14(c). It is a defense to prosecution if the officer used
excessive force. See id. § 38.14(d).

 Proof of intent generally relies on circumstantial evidence. See Steinbach v. State,
979 S.W.2d 836, 842 (Tex. App.--Austin 1998, pet. ref'd). Intent may be inferred from the
circumstances of the illegal act, and from the defendant's words and conduct. See Maldonado v.
State, 998 S.W.2d 239, 243 (Tex. Crim. App. 1999); Steinbach, 979 S.W.2d at 842. Whether
circumstantial evidence establishes the required intent is a question of fact for the jury. See
Maldonado, 998 S.W.2d at 243; Cruz v. State, 838 S.W.2d 682, 684 (Tex. App.--Houston [14th
Dist.] 1992, pet. ref'd).

 O'Connor testified that he feared for his life during the struggle, he believed
appellant had pulled the trigger, and appellant continued to try to take the gun after it jammed and
the clip was ejected. Appellant tried to pick up the clip after O'Connor lost control of the gun and
continued to struggle after being told to run. Even considering appellant's defensive testimony,
the jury's finding that he intended to harm O'Connor is not so against the great weight and
preponderance of the evidence as to be clearly wrong and unjust. We overrule appellant's first
issue.


Assault of a public servant

 Appellant next argues that the evidence is factually insufficient to support the jury's
finding that he was not justified in acting in self-defense in committing the assault on O'Connor. 
The jury charge instructed the jury that resistance was justified if, before appellant resisted,
O'Connor used or attempted to use unnecessary force, and if appellant used only the force he
reasonably believed was immediately necessary to protect himself. See Tex. Penal Code Ann.
§ 9.31(c) (West Supp. 2000). Appellant claims the evidence established that O'Connor used
unlawful and unnecessary force in not telling appellant why he was being detained or arrested or
why O'Connor was pointing the gun at him, pulling him to the back of the car by his pants, and
hitting him in the head with the gun. We disagree.

 Appellant's testimony was the only evidence that O'Connor hit him with the gun,
and it was rebutted by O'Connor and three eye witnesses, all of whom testified they did not see
O'Connor hit or threaten appellant. O'Connor admitted to pulling appellant by his belt, and said
he did this after appellant refused to come to the back of the car as instructed. He denied hitting
appellant with the gun. Appellant admitted he "figured" O'Connor was a police officer. 
O'Connor testified he did not know if appellant had a weapon either on his body or in his car. 
The jury's failure to find that appellant was justified in defending himself is not so against the
overwhelming weight of the evidence as to be clearly unjust. We overrule appellant's second
issue.


Conclusion

 Having overruled appellant's claims that the evidence was factually insufficient to
support his convictions, we affirm the trial court's judgments of conviction in both causes.



 

 Jan P. Patterson, Justice

Before Justices Jones, Yeakel and Patterson

Affirmed

Filed: March 2, 2000

Do Not Publish



 cross-examination, appellant said he
figured O'Connor was a police officer who was stopping him because the woman had tried to rob
Foreman. When asked to read his testimony from the trial for attempted robbery, appellant said
he did not remember answering "Yes, ma'am" to the question of whether he knew O'Connor was
a police officer. Reading his prior testimony, appellant said, "I say I remember him being a
police officer, I figured he was a police officer." Appellant heard O'Connor tell Capetillo to call
911.


Taking or attempting to take an officer's weapon

 Appellant argues the evidence is factually insufficient to support the finding that
he intended to harm O'Connor. We disagree.

 A defendant commits an offense under section 38.14 of the Texas Penal Code if
he "intentionally or knowingly and with force takes or attempts to take from a peace officer . .
. the officer's firearm . . . with the intention of harming the officer or a third person." Tex.
Penal Code Ann. § 38.14(b) (West Supp. 2000). The defendant is presumed to have known that
the person confronting him was a peace officer if he identified himself as an officer or wore a
distinctive uniform or badge. See id. § 38.14(c). It is a defense to prosecution if the officer used
excessive force. See id. § 38.14(d).

 Proof of intent generally relies on circumstantial evidence. See Steinbach v. State,
979 S.W.2d 836, 842 (Tex. App.--Austin 1998, pet. ref'd). Intent may be inferred from the
circumstances of the illegal act, and from the defendant's words and conduct. See Maldonado v.
State, 998 S.W.2d 239, 243 (Tex. Crim. App. 1999); Steinbach, 979 S.W.2d at 842. Whether
circumstantial evidence establishes the required intent is a question of fact for the jury. See
Maldonado, 998 S.W.2d at 243; Cruz v. State, 838 S.W.2d 682, 684 (Tex. App.--Houston [14th
Dist.] 1992, pet. ref'd).

 O'Connor testified that he feared for his life during the struggle, he believed
appellant had pulled the trigger, and appellant continued to try to take the gun after it jammed and
the clip was ejected. Appellant tried to pick up the clip after O'Connor lost control of the gun and
continued to struggle after being told to run. Even considering appellant's defensive testimony,
the jury's finding that he intended to harm O'Connor is not so against the great weight and
preponderance of the evidence as to be clearly wrong and unjust. We overrule appellant's first
issue.


Assault of a public servant

 Appellant next argues that the evidence is factually insufficient to support the jury's
finding that he was not justified in acting in self-defense in committing the assault on O'Connor. 
The jury charge instructed the jury that resistance was justified if, before appellant resisted,
O'Connor used or attempted to use unnecessary force, and if appellant used only the force he
reasonably believed was immediately necessary to protect himself. See Tex. Penal Code Ann.
§ 9.31(c) (West Supp. 2000). Appellant claims the evidence established that O'Connor used
unlawful and unnecessary force in not telling appellant why he was being detained or arrested or
why O'Connor was pointing the gun at him, pulling him to the back of the car by his pants, and
hitting him in the head with the gun. We disagree.

 Appellant's testimony was the only evidence that O'Connor hit him with the gun,
and it was rebutted by O'Connor and three eye witnesses, all of whom testified they did not see
O'Connor hit or threaten appellant. O'Connor admitted to pulling appellant by his belt, and said
he did this after appellant refused to come to the back of the car as instructed. He denied hitting
appellant with the gun. Appellant admitted h