TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-00-00611-CV






 

In the Matter of R. L.








FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT,


NO. J-19,476, HONORABLE F. SCOTT MCCOWN, JUDGE PRESIDING







 R.L. appeals the adjudication that he engaged in delinquent conduct. He contends
that the evidence is legally and factually insufficient to support the jury's finding that he committed
the offense of indecency with a child by contact. We will affirm the adjudication.


BACKGROUND


 R.L., a sixteen-year-old male, and the complainant, C.O., an eight-year-old female,
are cousins. Their respective mothers, Silvia and Yolanda, are sisters. Silvia and R.L. live next door
to the children's grandparents and Gloria, the mothers' sister. C.O. and her brother stayed at the
grandparents' house when their mother was working. Yolanda and Silvia were not on speaking
terms at the time of the incident, though they bore no animosity towards each other's children. 

 In February 1999, C.O. came inside her grandmother's house after jumping on a
trampoline and reported to Gloria that she was bleeding in her panties; R.L. was not around that day. 
Gloria guessed that C.O. had started menstruating, as Gloria had also started fairly young. She said
that, though she had seen R.L. and C.O. alone a couple of times, she never noticed inappropriate
sexual behavior. Gloria said, however, that at some point before July 1999 she noticed that C.O.'s
shorts went "into her" in a way that indicated she was having sexual contact with someone. When
C.O. denied that anyone had touched her sexually, Gloria told her to tell an adult about it if it
happened. Yolanda took C.O. to the doctor, fearing a recurrence of Henoch-Schonlein purpura
("HSP"), a condition which had prompted bloody urine and bruising and lower-body swelling when
C.O. was three years old. The doctor, noting some redness on C.O.'s genitals, rejected that theory
and diagnosed instead an allergy of some kind, perhaps to soap or laundry detergent.

 Yolanda said that, despite her animosity toward Silvia, she liked R.L. She said he
stayed at her house in late June 1999. Yolanda said she slept in her bedroom with her boyfriend,
R.L. stayed in the living room with her son and another young male cousin, and C.O. and another
young female cousin slept in the second bedroom, which she described as C.O.'s room. Yolanda
said she heard nothing unusual that night, did not notice anything unusual in anyone's behavior the
next day, and observed no signs of an assault.

 At trial, C.O. testified to a sequence of contacts in an incident with R.L. She said that
R.L. was at her house one night when her mother was not around. She said R.L. called her to come
into her bedroom. R.L. touched her "middle part" (which part she described as where she went to
the bathroom) with his hand over her panties; when later asked to point out the "middle part" of a
girl on an anatomically correct doll, she pointed to the doll's genital area. She said R.L. also slipped
his "middle part" through the leg of her panties and touched her genitals with it; when asked to point
out the "middle part" of a boy on an anatomically correct doll, she pointed to the doll's penis. She
could not, however, describe how R.L.'s penis looked or felt. She said that, after touching her
genitals, R.L. asked her to turn over, then pulled her panties part of the way down her legs and put
his penis on her bottom. She also said that when he put his penis on her genitals and her bottom she
could feel him inside her and that it hurt. She said that R.L. remained clothed during the offense
except for exposing his penis. She also said that he remained standing. She said the offense
occurred in the bedroom she shared with her mother. She said that after the contact, they returned
to the kitchen.

 Yolanda testified that C.O. told her of R.L.'s offense in early July 1999. When C.O.'s
cousins accused C.O. of doing and saying "nasty things" to them, Yolanda took her to the
grandmother to ask C.O. about the accusations; Yolanda thought C.O. might be more responsive
there because C.O. was close to her grandmother. (At trial, C.O. did not remember the cousins'
accusations.) C.O. started crying and said she did not want her mother to be angry with her, and
eventually said that R.L. had been touching her all over. C.O. said she had not told before because
she feared her mother would not believe her. Yolanda immediately confronted R.L. and Silvia with
the accusation in C.O.'s presence. R.L. accused C.O. of lying, saying "I hadn't done nothing to her
in a long time"; C.O. started crying harder and accused R.L. of lying. Yolanda did not contact the
police or Child Protective Services ("CPS").

 Silvia testified that, rather than crying during this confrontation, C.O. was smiling and
laughing, but that Yolanda was yelling and virtually incoherent. Silvia thought she was complaining
about nonsexual touching (i.e., hitting) and in particular about a recent incident at a swimming pool. 
Silvia and Gloria testified that, within a week before the outcry, C.O. was angry with R.L. and Silvia
because R.L. and other boys were playing rough, splashing C.O., and Silvia would not make them
stop. C.O. also complained that the girls would not play with her. When Silvia suggested she swim
by herself, C.O. got angrier and said, "You wait and see." 

 The day after the outcry, Yolanda took C.O. to the doctor for an examination. He
examined C.O. with Yolanda in the room. C.O. told him that her cousin had touched her in her
genital area many times. The doctor noticed a diffuse redness in C.O.'s genital and rectal areas, but
no bruising or tearing. The doctor conceded that these observations are consistent with, but not
proof of, sexual abuse; he also conceded that the redness could have other causes. Yolanda said that,
as they were driving home after the doctor's examination, C.O. said she forgot to tell the doctor that
R.L. tried to "stick his penis in my behind." Yolanda called the doctor. He contacted CPS.

 C.O. was examined by a forensic interviewer at the Travis County Children's
Advocacy Center. The interviewer said C.O. told her that R.L. had made her touch his penis with
her hand and exposed his penis, put his penis in her vagina, and put his penis in her bottom.

 Other experts who did not examine C.O. testified regarding the physical and
emotional signs of sexual abuse. They said that the irritation caused by sexual contact can pass in
a short amount of time. The physician's reports of C.O.'s symptoms were consistent with sexual
contact, but also with poor hygiene or soap allergies. They said outcries are usually incomplete at
first because the child is uncertain how the report will be accepted, especially if the outcry is against
a family member whom the child likes; children can be misled by investigators, however, and may
fabricate or embellish, seeking to retain the attention given to them by their initial report.

 Yolanda testified that she noticed changes in C.O. after the outcry. She said C.O. now
cries a lot, overeats, has gained weight, fears sleeping alone, and is distracted in school, resulting in
fluctuating grades.

 Gloria testified that she had noticed no changes in C.O. She said that C.O. was
always heavyset, just like all the people on both sides of her family. She said C.O. was spoiled,
especially by the grandmother, and knew how to get what she wanted. Gloria once caught C.O.
watching an adult movie on television. Gloria also said that C.O. slept in Yolanda's room, even
when Yolanda's boyfriend was there.

 R.L. was charged with aggravated sexual assault of a child, indecency with a child
by contact, and indecency with a child by exposure. The jury found he had engaged in all three. The
court, however, found the evidence legally insufficient to support the finding of aggravated sexual
assault. The court adjudicated R.L. guilty of indecency by contact, but was silent as to indecency
by exposure. The court sentenced R.L. to serve three years in the Texas Youth Commission.


DISCUSSION


 We will first set out the elements of the offense and the standard of review before
assessing whether the evidence meets the standards to satisfy those elements.


Elements of offense and standard of review

 The court instructed the jury on the elements of the offense of indecency with a child
in accordance with the statute. A person commits that offense if he engages in sexual contact with
a child younger than 17 years and not his spouse. Tex. Penal Code Ann. § 21.11(a)(1) (West Supp.
2001). "'Sexual contact' includes any touching of any part of the genitals of another person with
intent to arouse or gratify the sexual desire of any person." Id. § 21.01(2) (West 1994). Contact with
the genitals through clothing can suffice. See Resnick v. State, 574 S.W.2d 558, 560 (Tex. Crim.
App. [Panel Op.] 1978); see also Steinbach v. State, 979 S.W.2d 836, 840 (Tex. App.--Austin 1998,
pet. ref'd). The intent to arouse or gratify sexual desire can be inferred from conduct, remarks, and
all of the surrounding circumstances. McKenzie v. State, 617 S.W.2d 211, 216 (Tex. Crim. App.
1981); Murray v. State, 24 S.W.3d 881, 886 (Tex. App.--Waco 2000, pet. ref'd); Couchman v.
State, 3 S.W.3d 155, 163 (Tex. App.--Fort Worth 1999, pet. ref'd).

 To determine whether the evidence is legally sufficient to support the adjudication,
we view the evidence in the light most favorable to the finding and determine whether any rational
trier of fact could have found the elements of the offense proven beyond a reasonable doubt. In re
C.C., 13 S.W.3d 854, 857 (Tex. App.--Austin 2000, no pet.); see also In re J.S., 35 S.W.3d 287,
292 (Tex. App.--Fort Worth 2001, no pet. hist.); In re B.M., 1 S.W.3d 204, 206 (Tex. App.--Tyler
1999, no pet.). (1) In reviewing factual sufficiency, we consider and weigh all of the evidence and, if
the finding is so against the great weight and preponderance of the evidence as to be manifestly
unjust, we set aside the disposition order and remand the case for a new disposition hearing. See
C.C. 13 S.W.3d at 859; In re C.P., 998 S.W.2d 703, 708 (Tex. App.--Waco 1999, no pet.). We are
not free to re-weigh the evidence and set aside a verdict merely because we feel that a different result
is more reasonable. Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997); Clewis v. State, 
922 S.W.2d 126, 135 (Tex. Crim. App. 1996). We must defer to the factfinder's findings and may
find the evidence factually insufficient only where necessary to prevent a manifest injustice. Cain,
958 S.W.2d at 407. A decision is not manifestly unjust as to the accused merely because the
factfinder resolved conflicting views of the evidence in favor of the State. Id. at 410. 


Application of facts to law

 R.L. concedes that C.O. is younger than seventeen and not his spouse, but argues that
the evidence does not support finding the remaining elements of indecent contact. He argues that
the court's rejection of the jury's finding of aggravated sexual assault requires rejection of the
indecency counts. He contends that the evidence does not support finding that he had sexual contact
with C.O. with the intention of gratifying someone's sexual desire.

 R.L. argues that the only possible bases for the court's rejection of the aggravated
sexual assault claim apply with equal force to the indecency finding. The court charged the jury that
a person commits aggravated sexual assault


 if the person intentionally or knowingly causes the penetration of the anus or female
sexual organ of a child by any means; or if the person intentionally or knowingly
causes the sexual organ of a child to contact the sexual organ of another person,
including the actor; or if the person intentionally and knowingly causes the anus of
a child to contact the sexual organ of another person. 



See Tex. Penal Code Ann. § 22.021(a)(1)(B) (West 1994). The court charged the jury that a person
commits indecency with a child by contact if "with a child younger than seventeen years of age and
not his spouse, whether the child is of the same or opposite sex, he engages in [touching of any part
of the genitals of another person with intent to arouse or gratify the sexual desire of any person] with
the child." See id. § 21.11(a)(1). Based on the undisputed facts and a comparison of the elements
of the offenses, R.L. reasons that the court's rejection of the jury's finding of aggravated assault
means that the court must have held as a matter of law either that R.L. did not contact C.O.'s female
sexual organ or anus with his penis or that he did not do so intentionally or knowingly. He argues
that the court could do so only if it disbelieved C.O.'s testimony. He further reasons that the court's
rejection of the testimony supporting either scenario requires this Court to also find that the evidence
does not support essential elements of the indecency finding.

 We conclude that the evidence, as well as distinctions between the elements of the
offenses, permitted the court to disregard aggravated assault and accept the indecency finding. The
court could have rejected C.O.'s testimony that R.L. caused his sexual organ to penetrate or contact 
her anus or sexual organ, and yet have credited her testimony that he contacted her genitals with his
hand; as discussed below, circumstances support the inference that he touched her in order to gratify
his sexual desire. This decision would support both the rejection of the aggravated assault finding
as a matter of law and the acceptance of the indecent contact finding.

 Viewing the evidence in the light most favorable to the adjudication, we conclude that
a rational trier of fact could have found the elements of indecency by contact beyond a reasonable
doubt. There is no dispute that C.O. is under seventeen and unmarried. The record contains C.O.'s
direct testimony and outcry witness testimony that R.L. touched her genitals through her underwear. 
Physical evidence was consistent with such touching. There was evidence that C.O. manifested
psychological effects consistent with abuse. The necessary intent can be inferred from the
circumstances; testimony that a sixteen-year-old male called a female into a bedroom, touched her
genitals through her underwear, got her to roll over, and pulled down her underwear supports a
reasonable inference that he did so to gratify his sexual desire. The evidence is legally sufficient to
support the adjudication. We resolve issue one in favor of the judgment.

 After considering and weighing all of the evidence, we conclude that the jury's
finding is not so against the great weight and preponderance of the evidence as to be manifestly
unjust. There was evidence against the judgment. C.O.'s genital irritation could have had causes
other than sexual contact. C.O.'s direct testimony was not entirely unambiguous in its terminology,
and her story as related by the outcry witnesses varied somewhat. For example, Yolanda testified
to standard sleeping arrangements at her house that differed from those described in C.O. and
Gloria's testimony. The outcry witnesses, including Yolanda, testified that C.O. used more explicit
terms and described more offenses than C.O. testified about in trial. There was evidence of C.O.'s
motivation to lie, including the friction between Yolanda and Silvia, as well as C.O.'s anger at R.L.
for splashing her and at Silvia for letting him get away with it. There was testimony that R.L. denied
improperly touching C.O. The evidence contrary to the judgment, however, does not render the
jury's finding so against the great weight and preponderance of the evidence as to be manifestly
unjust. We do not find the evidence factually insufficient to support the judgment. We resolve issue
two in favor of the judgment.




CONCLUSION


 Having resolved all issues in favor of the judgment, we affirm the judgment.



 

 Jan P. Patterson, Justice

Before Chief Justice Aboussie, Justices Yeakel and Patterson

Affirmed

Filed: June 29, 2001

Do Not Publish
1. This is the standard applied in criminal cases. We note that some courts of appeals apply the
civil standard of review in juvenile cases. See In re A.S., 954 S.W.2d 855, 860-61 (Tex. App.--El
Paso 1997, no pet.).



enses, R.L. reasons that the court's rejection of the jury's finding of aggravated assault
means that the court must have held as a matter of law either that R.L. did not contact C.O.'s female
sexual organ or anus with his penis or that he did not do so intentionally or knowingly. He argues
that the court could do so only if it disbelieved C.O.'s testimony. He further reasons that the court's
rejection of the testimony supporting either scenario requires this Court to also find that the evidence
does not support essential elements of the indecency finding.

 We conclude that the evidence, as well as distinctions between the elements of the
offenses, permitted the court to disregard aggravated assault and accept the indecency finding. The
court could have rejected C.O.'s testimony that R.L. caused his sexual organ to penetrate or contact 
her anus or sexual organ, and yet have credited her testimony that he contacted her genitals with his
hand; as discussed below, circumstances support the inference that he touched her in order to gratify
his sexual desire. This decision would support both the rejection of the aggravated assault finding
as a matter of law and the acceptance of the indecent contact finding.

 Viewing the evidence in the light most favorable to the adjudication, we conclude that
a rational trier of fact could have found the elements of indecency by contact beyond a reasonable
doubt. There is no dispute that C.O. is under seventeen and unmarried. The record contains C.O.'s
direct testimony and outcry witness testimony that R.L. touched her genitals through her underwear. 
Physical evidence was consistent with such touching. There was evidence that C.O. manifested
psychological effects consistent with abuse. The necessary intent can be inferred from the
circumstances; testimony that a sixteen-year-old male called a female into a bedroom, touched her
genitals through her underwear, got her to roll over, and pulled down her underwear supports a
reasonable inference that he did so to gratify his sexual desire. The evidence is legally sufficient to
support the adjudication. We resolve issue one in favor of the judgment.

 After considering and weighing all of the evidence, we conclude that the jury's
finding is not so against the great weight and preponderance of the evidence as to be manifestly
unjust. There was evidence against the judgment. C.O.'s genital irritation could have had causes
other than sexual contact. C.O.'s direct testimony was not entirely unambiguous in its terminology,
and her story as related by the outcry witnesses varied somewhat. For example, Yolanda testified
to standard sleeping arrangements at her house that differed from those described in C.O. and
Gloria's testimony. The outcry witnesses, including Yolanda, testified that C.O. used more explicit
terms and described more offenses than C.O. testified about in trial. There was evidence of C.O.'s
motivation to lie, including the friction between Yolanda and Silvia, as well as C.O.'s anger at R.L.
for splashing her and at Silvia for letting him get away with it. There was testimony that R.L. denied
improperly touching C.O. The evidence contrary to the judgment, however, does not render the
jury's finding so against the great weight and preponderance of the evidence as to be manifestly
unjust. We do not find the evidence factually insufficient to support the judgment. We resolve issue
two in favor of the judgment.




CONCLUSION


 Having resolved all issues in favor of the judgment, we affirm the judgment.



 

 Jan P. Patterson, Justice