COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| YAN QIU ZHAO, | § | No. 08-19-00311-CR |
| Appellant, | § | Appeal from the |
| v. | § | County Court |
| THE STATE OF TEXAS | § | of Andrews County, Texas |
| Appellee. | § | (TC# 19-0144) |

## **O P I N I O N**

A jury convicted Appellant, Yan Qiu Zhao, of two counts of prostitution and sentenced her to 30 days confinement for each count, which the trial court suspended to impose consecutive terms of six months' community supervision. Appellant makes three claims on appeal: (1) the trial court erred in allowing a witness to testify to Appellant's state of mind, (2) the State improperly excluded male venire members from the jury, and (3) the evidence was insufficient to support her conviction. We affirm the trial court's judgment of conviction.

## I. BACKGROUND FACTS

The State prosecuted Appellant, a masseuse, for offering to engage in sexual contact with her massage clients for a fee. The information alleges two distinct encounters, one with an ordinary

customer and one with an undercover officer. Each complaining witness testified at trial. This appeal arises from the charge related to the ordinary customer, Victor Davila.

Victor Davila went to Forest Massage and agreed to pay Appellant $60 for a massage. Appellant led Davila to an individual room in the back of the salon and told him to remove his clothes. Because he only needed his back massaged, Davila just removed his shirt and kept his basketball shorts on when he got under the blanket. When Appellant entered the room to begin the massage, she told Davila to take off his shorts. Davila did so, and got back under the blanket lying face down, still wearing his boxers. Appellant then pulled the blanket down to Davila's waist, and she removed Davila's boxers completely. Davila did not know if this was normal; however, he felt okay because he was under a blanket.

Appellant then removed the blanket completely while Davila was still lying face down, and she massaged him with his backside exposed. As she massaged his thigh, Davila felt Appellant's fingers brush against his scrotum. When Appellant asked Davila to turn over, she massaged his chest and worked her way down. Near the end of the massage, Appellant looked at Davila, grabbed the base of his penis, and whispered "40 dollar more." Davila said, "What? No." Appellant whispered again, "40 dollar more," and she repeated this phrase four times until Davila said "no." Appellant then put Davila's shorts back on and continued the massage.

Davila paid the agreed $60 charge for the massage, but testified he was shaking as he drove away. After consulting with his wife, he contacted the local police and related the entire story.

Thereafter, the Andrews Police Department initiated an investigation into Forest Massage. Sergeant Shawn Kelley went into Forest Massage posing as a civilian customer. Appellant was standing at the counter, and Sergeant Kelley requested a $60, hour-long massage. Appellant led

2

him to an individual room and instructed him to remove all of his clothes. Sergeant Kelley then laid face down under the sheet.[1]

Midway into the massage, Appellant asked Sergeant Kelley to flip over onto his back. Appellant then removed the sheet, exposing the Sergeant's genitals. Sergeant Kelley testified that this normally does occur during a massage. Appellant began massaging Sergeant Kelley's legs, and then rubbed her hand over his genital area, touching his penis as she looked at him. While Appellant's eyes were still on Sergeant Kelley, he asked Appellant how much she charged. Appellant responded, "I don't know. You tell me." Sergeant Kelley replied, "this is my first time." Appellant leaned into Sergeant Kelley's right ear and whispered, "Is $40 okay?" Sergeant Kelley believed that the illegal agreement was then made, so he ended the massage by grabbing his clothes. Sergeant Kelley told Appellant that he was getting called out for work. As Sergeant Kelley dressed, Appellant repeated, "I'm sorry, I'm sorry." She became aggressive and stood between Sergeant Kelley and the door, grabbing his arm and continuing to apologize as he tried to leave. Sergeant Kelley had to force Appellant away from the door so that he could leave the room. Other officers then entered the establishment and arrested Appellant.

Appellant called no witnesses in her case in chief. The jury charge instructed that the State must prove that Appellant (1) knowingly offered to engage in sexual conduct with the complaining witnesses, and (2) offered or agreed to a fee. *See* TEX. PENAL CODE ANN. § 43.02(a) (providing that prostitution is committed when a person knowingly offers or agrees to receive a fee to engage in sexual conduct). The jury convicted Appellant, under jury questions that separately inquired about Davila and Sergeant Kelley. Based on the punishment questions, the trial court sentenced

---

[1] Sergeant Kelley hid a recording device in his clothes that enabled law enforcement outside the building to listen to his interactions. But by happenstance, Appellant moved Sergeant Kelley's clothes next to a speaker playing music that drowned out the dialog for the listening the officers.

3

Appellant to 30 days confinement for each count, which the trial court suspended to impose consecutive terms of six months community supervision. She raises three issues on appeal.

## II. EVIDENTIARY RULING

Appellant first argues that the trial court improperly permitted Davila to speculate about her mental state when Davila testified that he "guessed" Appellant wanted sexual contact when she grabbed his penis. She maintains that this error was harmful for both convictions, because Davila's testimony was the only evidence interpreting her statement of "40 dollar more" as sexual and not a request to prolong the massage. The State responds that trial counsel did not object to Davila's statement. We conclude that the question that drew the response that Appellant principally complains about was not objected to, and that the trial court did not err in allowing the question that was objected to.

### A. Trial Testimony

The following exchange occurred during Davila's direct examination:

PROSECUTOR: Did you at all ask her to touch your penis?

DAVILA: No.

PROSECUTOR: Did you give any indication that you wanted her in any way to perform -- touch you sexually at all?

DAVILA: None.

PROSECUTOR: When she grabbed your penis, did there seem any confusion on her part about what you had asked for in the massage?

DEFENSE COUNSEL: Objection, Your Honor, speculation.

PROSECUTOR: I am asking him to testify if he saw anything that would lead him to assume that she was confused or otherwise hesitant -- her exact intent, I don't know, but was there any actual evidence?

DEFENSE COUNSEL: Your Honor, he asked how it seemed to him. That is asking him to infer her mental state and that is beyond the bounds of Rule 602.

4

COURT:  Overruled.

PROSECUTOR:  Did [Appellant] give any indication that she was confused?

DAVILA:  None.  She asked four times.

PROSECUTOR:  And again, you told her no four times?

DAVILA:  Yes.  She seemed confused after the no because I guess she felt like I wanted it, but I did not.

PROSECUTOR:  Okay.  You said she then put your boxers on and finished the massage.  Were there any other incidents after that point?

DAVILA:  None.  No.  That is it.

## B.  Preservation of Error

To preserve error, a defendant must make a timely, specific objection, and obtain a ruling or object to the trial court's refusal to rule.  *See Dixon v. State*, 595 S.W.3d 216, 223 (Tex.Crim.App. 2020), *citing* TEX.R.APP.P. 33.1(a)(1)(A).  A defendant must also object each time inadmissible evidence is offered, unless she obtains a running objection or a ruling on the complaint outside the presence of the jury.  *See Lopez v. State*, 253 S.W.3d 680, 684 (Tex.Crim.App. 2008).  Error in the admission of evidence  is cured where the same evidence comes in elsewhere without objection.  *See Valle v. State*, 109 S.W.3d 500, 509 (Tex.Crim.App. 2003); *Leday v. State*, 983 S.W.2d 713, 718 (Tex.Crim.App. 1998) (en banc) ("overruling an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling."). This Court may not reverse a conviction without first addressing error preservation.  *See Spielbauer v. State*, 622 S.W.3d 314, 318 (Tex.Crim.App. 2021), *citing* TEX.R.APP.P. 33.1; *see Dixon*, 595 S.W.3d at 223 (explaining that "the preservation of error is a systemic requirement that a first-tier appellate court is obligated to address before reversing a conviction").

5

## C. The Evidence was Admitted Without Objection

Trial counsel objected to the State's first question asking whether Appellant gave any "indication" of confusion. Counsel did not object when Davila then testified in answer to a different question ("And again, you told her no four times?") that Appellant appeared confused "because I guess she felt like I wanted it, but I did not." The answer was not actually responsive to the question asked, but no objection to the answer, or motion to disregard was urged to the trial court. Because counsel did not object to the evidence every time it was offered and did not obtain a running objection, any error in the admission of the testimony was forfeited. *See Valle*, 109 S.W.3d at 509; TEX.R.APP.P. 33.1(a).

## D. Trial Court did not Improperly Admit Testimony

Moreover, the trial court's ruling on the question to which an objection was made was not error. The single question that Appellant objected to only asked if Appellant gave any indication that she was confused. As such, it was asking no more than whether Appellant gave any outward expressions of confusion. It would be no different than asking a witness whether another person appeared surprised, sad, angry, fearful, etc. in response to a particular event. This sort of testimony is permissible assuming the testifying witness's opinion on that topic is "rationally based on the witness's perception" and the opinion "helpful to clearly understanding the witness's testimony or to determining a fact in issue." TEX.R.EVID. 701. Whether the person actually has that emotional state is for the fact finder to consider. The person's outward appearance is but one fact for the fact finder to determine. *See Fairow v. State*, 943 S.W.2d 895, 899 (Tex.Crim.App. 1997) (en banc) ("So, while a witness cannot possess personal knowledge of another's mental state, he may possess personal knowledge of facts from which an opinion regarding mental state may be drawn. The jury is then free to give as much or as little weight to the opinion as it sees fit.").

The trial court's application of Rule 701 to any particular situation is reviewed for an abuse of discretion. *Fairow*, 943 S.W.2d at 901 ("Whether an opinion meets the fundamental requirements of Rule 701 is within the sound discretion of the trial court and its decision regarding admissibility should be overturned only if it abuses its discretion."). Given that Davila was in the room with Appellant, could see her facial expressions and hear her words, he had a rational basis to form an opinion of her outward manifestations of confusion. Appellant's first issue is overruled.

### III. SUFFICIENCY OF THE EVIDENCE

Appellant's third issue argues that the evidence was insufficient to support the convictions, because she did not offer to take $40 in exchange for any specific sexual act. Davila and Sergeant Kelley both paid for a full-body massage, and neither asked for any additional services nor exchanged additional money with Appellant. Appellant argues that the testimony only showed she had an open palm at the base of Davila's penis and only grazed Sergeant Kelley's with a cupped hand. From this, she urges that the "40 dollar more" comment might mean nothing more than a suggestion to extend the time of the massage. The State responds that sufficient evidence supports the convictions because the circumstance of Appellant touching both witnesses' genitals while offering to continue for $40 more could only be interpreted as an offer to perform a sexual act for money. We agree with the State.

### A. Standard of Review

The Fourteenth Amendment's guarantee of due process requires that every conviction must be supported by legally sufficient evidence. *See Jackson v. Virginia*, 443 U.S. 307, 315-16 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex.Crim.App. 2010). In a legal sufficiency challenge, we focus solely on whether the evidence, when viewed in the light most favorable to the verdict, would permit any rational jury to find the essential elements of the offense beyond a reasonable doubt.

7

*Jackson*, 443 U.S. at 318-19; *Brooks*, 323 S.W.3d at 912 (establishing legal insufficiency under *Jackson v. Virginia* as the only standard for review of the evidence).

Circumstantial evidence is considered as probative as direct evidence in establishing guilt, and circumstantial evidence alone can establish guilt of an actor. *See Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007). A court assesses a sufficiency challenge by comparing the evidence presented at trial to the elements of the offense as "defined by the hypothetically correct jury charge for the case." *See Ramjattansingh v. State*, 548 S.W.3d 540, 546 (Tex.Crim.App. 2018), *quoting Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997) (en banc).

Applying that standard, we recognize that our system designates the jury as the sole arbiter of the credibility and the weight attached to the testimony of each witness. *Metcalf v. State*, 597 S.W.3d 847, 855 (Tex.Crim.App. 2020); *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex.Crim.App. 2014). Only the jury acts "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Clayton v. State*, 235 S.W.3d 772, 778 (Tex.Crim.App. 2007), *quoting Jackson*, 443 U.S. at 319. In doing so, the jury remains at liberty to believe "all, some, or none of a witness's testimony." *Metcalf*, 597 S.W.3d at 855. When the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict, and we defer to that determination. *Dobbs*, 434 S.W.3d at 170; *see also Jackson*, 443 U.S. at 319.

### B. Elements of Prostitution

The State charged Appellant with an information that alleged she knowingly offered to engage in sexual contact with Davila for a fee. The Court of Criminal Appeals explained that an information using such language charged the act of *offering or agreeing* to engage in sexual contact rather than engaging in sexual contact. *See Cardenas v. State*, 640 S.W.2d 291, 292 (Tex.Crim.App. 1982) (en banc). To convict Appellant of prostitution, the jury thus had to find

8

from the evidence that Appellant (1) knowingly, (2) offered or agreed to receive a fee from another, (3) for sexual contact. *See* TEX.PENAL CODE ANN. § 43.02(a). Texas law defines sexual contact as "any touching of . . . any part of the genitals of another person with the intent to arouse or gratify the sexual desire of any person." *Id.* § 43.01(3).

The Court of Criminal Appeals has found that the evidence was sufficient to support a prostitution conviction when an undercover officer made the initial offer, so long as the defendant participated in the negotiations or also made an offer. *See Robinson v. State*, 643 S.W.2d 141, 142 (Tex.Crim.App. [Panel Op.] 1982). The court instructed that sufficient evidence of "offering to engage in sexual conduct" does not require proof that a definite "sum certain" was ascertained or final agreement was entered into. *See id.*

### C. The Evidence Supports the Conviction

The evidence supporting the verdict consists of eyewitness testimony from Davila and Sergeant Kelley attesting to remarkably similar experiences. Specifically, Davila testified that Appellant brushed his scrotum and exposed his naked genitals. Appellant then stimulated Davila's thigh and grabbed his penis with her palm open and facing down, as she whispered, "40 dollar more" four times, until he said no. Other circumstances support the jury's finding. Appellant had Davila completely undress when he initially by his actions gave indications he did not want to. Appellant also completely removed the sheet from Davila, rather than leaving the sheet covering the body areas she was not actively massaging. And she extended the offer through a whisper to him, as if to keep the matter private. Davila did not ask Appellant to touch his genitals, and he did not give Appellant any indication that he wanted her to touch him sexually.

Sergeant Kelley similarly testified that Appellant also rubbed her hand over his exposed genital area. When Sergeant Kelley asked Appellant how much she charged, Appellant replied, "I don't know, you tell me," and then whispered, "Is $40 okay?" When Sergeant Kelley suddenly

9

got up to leave, Appellant then repeated, "I'm sorry, I'm sorry," which indicated that she knew she had offended the patron. And as with Davila, Appellant completely removed the sheet from Sergeant Kelley's unclothed body, which was something unusual from the previous massages that Sergeant Kelley had received.

This evidence collectively is sufficient to support each element of the offense. Appellant's third issue is overruled.

## IV. JURY SELECTION

At trial, Appellant's counsel objected that the State improperly struck only male jurors with its peremptory challenges. Appellant argues on appeal that she is entitled to a new trial because the trial court did not offer her counsel an opportunity to rebut the State's gender-neutral reasons for its peremptory challenges prior to overruling counsel's *Batson* objection. The State responds that because Appellant did not object to its gender-neutral reasons for striking the jurors at trial or in her opening brief, she has not shown any error.[2] Again, we agree with the State.

### A. Controlling Law

In *Batson v. Kentucky*, 476 U.S. 79, 95 (1986) the United States Supreme Court held that the Equal Protection Clause of the Fourteenth Amendment prevents a prosecutor in a criminal trial from exercising peremptory challenges based on race. That rule was extended to gender in *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 128 (1994).

When adjudicating a *Batson* claim, trial courts follow a three-step process:

First, the party opposing a particular peremptory strike must establish a prima facie case of racial or gender discrimination. Second, the burden of production then shifts to the proponent of the strike to offer a race or gender-neutral explanation for that strike. If the proponent offers a race or gender-neutral explanation, the trial court must then decide whether the opponent has proved purposeful racial or gender discrimination.

---

[2] Appellant did not file a reply brief to address the State's arguments.

*Guzman v. State*, 85 S.W.3d 242, 246 (Tex.Crim.App. 2002) (en banc). Under this procedure, the prosecutor must give a clear and reasonably specific explanation of the legitimate reasons for exercising the challenge. *Batson*, 476 U.S. at 98 n.20. The trial court is then ultimately tasked with deciding if any proffered facially neutral explanation for a strike is pre-textual. *See Watkins v. State*, 245 S.W.3d 444, 447 (Tex.Crim.App. 2008). In that regard, we only overturn the trial court's ruling if it is clearly erroneous. *Id.* at 447-48.

While a *Batson* challenge involves shifting burdens, the complaining party always carries the ultimate burden of persuasion that a peremptory strike was based on an improper reason. *Batson*, 476 U.S. at 96-98; *Ford v. State*, 1 S.W.3d 691, 693 (Tex.Crim.App. 1999). Accordingly, "[t]he objecting party may rebut the race-neutral explanation." *Herron v. State*, 86 S.W.3d 621, 630 (Tex.Crim.App. 2002) (en banc). And the failure to offer any effective rebuttal of the State prosecutor's race-neutral (or here, gender-neutral) rationale can be fatal to the objecting party's claim. *See Johnson v. State*, 68 S.W.3d 644, 649 (Tex.Crim.App. 2002); *Jenkins v. State*, No. 08-15-00366-CR, 2017 WL 3614213, at *2 (Tex.App.--El Paso Aug. 23, 2017, no pet.) (not designated for publication). Appellant focuses on this last step, urging that she was not given the opportunity to rebut the State's gender-neutral explanation.

## B. The Voir Dire Record

This misdemeanor case was tried to a six-person jury. Each side was accorded three peremptory strikes. The State exercised its three strikes on three male prospective jurors. After the jurors were sworn in, Appellant's trial counsel argued as follows:

> I would like to make a motion on the record before we break. And I think I know the answer this is going to be but I feel like I have to do it to preserve the record for my client.
>
> I believe that everyone the State exercised a peremptory challenge on was male, so I feel like under *Batson versus Kentucky* I do have to make a challenge that the State exercised their strikes based on sex of the people that were struck.

11

The State then responded by offering the rationale for each of its peremptory strikes. The prosecutor stated that he struck venireperson number four because he appeared not interested in participating with either party during voir dire. The State offered two reasons for striking venireperson number six: (1) he wanted to avoid jury service because he asked the trial court if he could be excused, and (2) the State had successfully prosecuted him on more than one occasion for driving while intoxicated. The State struck number twelve because he enthusiastically nodded with Appellant's trial counsel when counsel discussed the defense of entrapment and the right to refuse searches.

The following exchange then occurred:

PROSECUTOR: So we are asking the Court to overrule [trial counsel's] Batson challenge on our peremptory strikes, Your Honor.

COURT: Overruled.

DEFENSE COUNSEL: And that was the only motion I had outside the presence of the jury. We are free to break now.

COURT: All right. Go to lunch and back by 2:00 and we will resume.

## C. Discussion

The opponent of the strike carries the burden of persuasion regarding the improper motivation. *Purkett v. Elem*, 514 U.S. 765, 768, (1995) (per curiam). The essence of Appellant's argument is that she was not given the opportunity to refute any of the facially neutral reasons offered by the State's prosecutor. But by the same token, Appellant never asked for that opportunity. She cites no case holding that the trial court must withhold its ruling until it affirmatively asks for a response, and we have found none in our research. As a practical matter, trial court's often make rulings based on what is before them without affirmatively asking for further response. When a ruling comes before a party has had a chance to make their reply, or

12

make their record, the proper procedure would be to ask the trial court to reconsider, or to make a bill to include what the party would have presented to the trial court prior to the ruling. Neither of those steps were taken here. *Cf.* TEX.R.APP.P. 33.1(a)(1)(A) ("As a prerequisite to presenting a complaint for appellate review, the record must show that . . . the complaint was made to the trial court by a timely request, objection, or motion that: . . . stated the grounds for the ruling that the complaining party sought from the trial court . . .").

Moreover, Appellant has not advanced any argument in her appellate brief that the prosecutor's stated basis for the peremptory strikes was pretextual. It is far from intuitive whether a male or female juror would favor the defense or State in this case, so the mere fact that three males were struck does not by itself suggest a discriminatory gender-based motive. More specifically, Appellant has not presented any argument that the prosecutor's stated reasons were not true. Courts recognize several avenues of argument to show pretext. *See Watkins*, 245 S.W.3d at 448 (setting out multiple recognized grounds on which a party can challenge a race-neutral explanation).[3] Appellant does not suggest she could fashion any such argument here. Nor did Appellant ask for the opportunity to develop a further record in aid of proving pretext. *See Pondexter v. State*, 942 S.W.2d 577, 582 (Tex.Crim.App. 1996) (en banc) (noting use of cross-examination of prosecutor and the limited ability to obtain the prosecutor's notes). Without specific arguments that the stated grounds for the strikes were pretextual, we cannot conclude the

---

[3] In the context of a race based challenge, the United States Supreme Court has looked to: (1) whether the State struck a higher percentage of the defendant's racial group than other racial groups; (2) whether the State's reasons for striking members of one racial group applied equally to other racial groups whom the State did not strike; (3) whether the State used jury shuffles in a manner that supported an inference of racial discrimination; (4) whether the State questioned one racial group differently and in a way designed to obtain answers justifying strikes of that group; and (5) whether the county in which the defendant was prosecuted had a formal policy of excluding minority jurors from service. *See Miller-El v. Dretke*, 545 U.S. 231, 240-64 (2005).

trial court committed reversible error even if it did deny Appellant the opportunity to present argument.

The trial court's finding regarding the credibility of an attorney's explanation of the ground for a peremptory challenge is "entitled to 'great deference,'" *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (per curiam) *quoting Batson*, 476 U.S. at 98 n.21.  Here, Appellant does nothing to suggest the trial court's ruling was clearly erroneous, or that any additional argument could have been mounted below to arrive at a different outcome.  Accordingly, Issue Two is overruled.

## V. CONCLUSION

Appellant's three issues are all overruled.  The judgment of conviction is affirmed.


JEFF ALLEY, Justice

August 9, 2021

Before Rodriguez, C.J., Palafox, and Alley, JJ.

(Do Not Publish)


14